**BEAUMONT BARBER COLLEGE, INC., et al., Appellants,**

v.

**TEXAS STATE BOARD OF BARBER EXAMINERS et al., Appellees.**

No. 11714.

Court of Civil Appeals of Texas.

Austin.

Dec. 10, 1969.

Rehearing Denied Jan. 7, 1970.

HUGHES, Justice.

This suit is brought by the Beaumont Barber College, Inc. and J. C. Quinn against the Texas State Board of Barber Ex-

aminers, its executive secretary, O. W. McStay, and the members of such Board in the nature of an appeal from an order of the Board revoking a permit previously issued to the Beaumont Barber College Branch, located at 3246 Avenue A, Beaumont, Texas.

Mr. J. C. Quinn was president of Beaumont Barber College, Inc.

The original permit was issued by the Board to the Beaumont Barber College Branch on August 28, 1959. It has operated continuously since such time.

When the original permit was issued and ever since the College Branch had and has had 1000 feet of floor space, twelve barber chairs and twelve class room chairs. The law in effect at that time did not specify how many square feet of space or the number of barber or class room chairs required for the operation of a barber college, nor did such law require the renewal of a permit once issued.[1]

■ In 1961 Art. 734a, Vernon's Tex. P.C., was amended[2] so as to provide in Sec. 9(c) (1) (3) (8):

"(c) No barber school or college which issues 'Class A' certificates shall be approved by the Board for the issuance of a permit unless said school or college has the following:

(1) An adequate school site housed in a substantial building of a permanent-type construction containing a minimum of not less than two thousand, eight hundred (2,800) square feet of floor space. * * *

(3) A minimum of twenty (20) modern barber chairs with cabinet and mirror for each chair.

(8) At least twenty (20) classroom chairs, * * *."

Appellants' permit to operate the Beaumont Barber College Branch at 3246 Avenue A, Beaumont, was revoked by the Board upon its findings that appellant had violated the above quoted provisions of Sec. 9 of Art. 734a, P.C. On appeal to the court below, this action was sustained.

It is undisputed that appellants' Barber College Branch has only 1000 square feet of floor space and twelve barber and twelve class room chairs. Upon the basis of these facts alone, the Board revoked appellants' permit. If the quoted provisions of the 1961 amendment of Art. 734a, P.C., are valid and applicable to appellants then the judgment of the trial court must be affirmed.

It is our opinion that the quoted portions of paragraphs (1) (3) and (8) of sub. (c), Sec. 9 of Art. 734a are not valid and if valid are not applicable to appellants.

Our reason for holding these portions of the statute invalid is that they constitute an unreasonable exercise of the police power of the State by the Legislature.

We quote from the testimony of Mr. McStay, the executive secretary of the Board:

"MR. GRIFFITH: * * * Will you please tell me now, if you will, wherein the enforcement of this law with respect to the having of 2800 sq. ft. in a barber college would enhance or protect or relate to or affect the public health, safety and welfare or morals of the great State of Texas? In your opinion.

MR. McSTAY: I don't think that the square footage is that pertinent to the school, but it is the law.

* * * * * *

MR. GRIFFITH: Well, do you see any * * * do you see any relationship

---

1. Acts 1930, 41st Leg., 5th C.S., ch. 15, p. 134. Art. 734a, Vernon's Tex.Penal Code, Sec. 9 (1–1–61).

2. Acts 1961, 57th Leg., ch. 287, p. 601.

between public health, welfare, safety or morals in requiring 2800 square feet of floor space for a barber college?

MR. McSTAY: There could be, yes.

MR. GRIFFITH: In what respect? Please tell us.

MR. McSTAY: It all would depend on crowded conditions or how many * * * in other words, as far as the teaching of barbering, no; you could probably teach it on one chair. I think it could be done that way * * * it could be done with one chair properly equipped, you could teach anyone barbering. So therefore the 20 chairs or the 2800 sq. ft. might not be pertinent to the thing but it's our interpretation that the law requires it.

MR. GRIFFITH: And in your opinion then it isn't necessarily related to public health. You can have a sanitary shop with 1,000 sq. ft. just as readily as you can operate a sanitary shop in 2800 sq. ft. Is that not correct?

MR. McSTAY: Yes, sir.

MR. GRIFFITH: And you can effectively teach barbering in 12 chairs I believe you testified Mr. Quinn has. * * *

MR. McSTAY: Yes, sir.

MR. GRIFFITH: * * * Just as effectively as you can with a minimum of 20 chairs, can you not?

MR. McSTAY: It's possible. It's possible.

* * * * * *

MR. GRIFFITH: All right, sir, so wouldn't you say that a man * * * that this requirement of 12 chairs * * * of a minimum of 20 chairs does not have any direct bearing on public health, safety or welfare?

MR. McSTAY: Yes, I would say that.

MR. GRIFFITH: All right, sir. I'll ask you whether or not 20 chairs in a classroom is essential to the public health, safety and welfare of this State?

MR. McSTAY: I'm sorry; I didn't catch * * * did you say, is it essential?

MR. GRIFFITH: Yes.

MR. McSTAY: No.

MR. GRIFFITH: It is not. All right, sir. Well, these are the only charges against Mr. Quinn, that he has violated. Is that not correct?

MR. McSTAY: To my knowledge.

* * * * * *

MR. GRIFFITH: Mr. McStay, the teaching of barbering is primarily a practicing art, is it not?

MR. McSTAY: The practical part, yes, sir.

MR. GRIFFITH: You can read a book from now on and talk about it from now on but you've got to practice it to develop the skill. Is that correct?

MR. McSTAY: That is correct, sir.

MR. GRIFFITH: Would you say that manual dexterity is a greater part of barbering and artistic aptitude perhaps than is the capacity to learn or high intelligence?

MR. McSTAY: Well, I think there's a certain amount of talent involved. I think anyone could go in and learn to just cut the hair off but to groom a person properly, I think it takes a certain type of talent or intelligence.

MR. GRIFFITH: Artistic aptitude, we'll say.

MR. McSTAY: Exactly.

MR. GRIFFITH: But general intelligence is not a prerequisite to becoming a skillful barber, is it?

MR. McSTAY: Not necessarily so, sir.

MR. GRIFFITH: All right, sir, then the primary objective of these controls and the primary objective of your schools is to turn out a barber who practices for sanitary habits on the general public, is that not right?

MR. McSTAY: Yes, sir.

MR. GRIFFITH: And secondly, who practices a reasonable degree of proficiency in cutting hair. Is that not right?

MR. McSTAY: That's two of the requirements, yes, sir.

MR. GRIFFITH: All right, sir. And so to do this * * * in order to do this, you must have people upon whom to practice. Is that nor correct?

MR. McSTAY: That'd be correct, yes, sir."

Appellant testified that his investment in the Barber College Branch was about $16,000.00, which, less some salvage, he will lose if his permit remains revoked. He leases the building in which the college is now located and he has no way of enlarging it.

Appellees cite Gerard v. Smith, 52 S.W. 2d 347, Tex.Civ.App., El Paso, writ ref. (1932) which holds that the regulation of the occupation of barbering was a valid exercise of the police power. In so holding, the Court stated:

"We are of the opinion that there can be no serious question but that there is danger of infection to the public from the carelessness and unskillfulness of barbers and from unsanitary methods of performing the functions of that occupation. The infection may be communicated from the barber himself to the customer or from one customer to another. Therefore the regulation of the occupation is proper for the protection of the health of the public and, consequently, a proper subject for the exercise of the police power."

The legislative act there upheld was the State Barber Law enacted by the 41st Legislature, Acts 1929, 1st C.S., p. 166, ch. 65. This act had no provision in it pertaining to the size of quarters for a barber school or to the number of chairs required.

We know of no better way to state the rules governing our decision on the validity of these portions of Art. 734a, P.C. than to quote again the authorities upon which we relied in Martin v. Wholesome Dairy, Inc., 437 S.W.2d 586, Tex.Civ.App., Austin, writ ref. n. r. e. (1969) where a similar constitutional question was before us. We quote from that opinion:

"On the other hand appellants contend that Art. 713a is a valid exercise of police power by the Legislature. This power is an attribute of sovereignty, not derived from the Constitution but is the inherent power of the State to protect the peace, health, happiness, and general welfare of the people. Constitutional Law, 12 Tex.Jur.2d, Sec. 70, p. 415.

We make the following quotations in order to authoritatively define the scope of our inquiry herein.

'In passing upon the constitutionality of a statute, we begin with a presumption of validity. It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. The wisdom or expediency of the law is the Legislature's prerogative, not ours. As quoted in this Court's opinion in Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627 at 634 (1939), " 'There is a strong presumption that a Legislature understands and correctly appreciates the needs of

its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.' " ' Smith v. Davis, 426 S.W. 2d 827, Tex.Sup. (1968).

'The question of whether a legislative act or ordinance is void is often difficult to determine. This is true because police power is broad and indefinite. It is thought that the following considerations are material and essential to a correct determination of the question: (1) is the ordinance appropriate and reasonably necessary under all the circumstances to accomplish a purpose within the scope of the police power; (2) is the ordinance reasonable in the sense of not being arbitrary and unjust, or is the effect on individuals of the action taken so unduly harsh and hard as to be out of proportion to the end sought to be accomplished. In the case of Houston & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 684, 653, 70 L.R.A. 850, Judge Williams used the following language: "The power is not an arbitrary one, but has its limitations. It is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort, and convenience as consistently as may be with private property rights. As those needs are extensive, various, and indefinite, the power to deal with them is likewise broad, indefinite, and impracticable of precise definition or limitation. But as the citizen cannot be deprived of his property without due process of law, and as a privation by force of the police power fulfills this requirement only when the power is exercised for the purpose of accomplishing, and in a manner appropriate to the accomplishment of, the purposes for which it exists, it may often become necessary for courts, having proper regard to the constitutional safeguard referred to in favor of the citizen, to inquire as to the existence of the facts upon which a given exercise of the power rests, and into the manner of its exercise, and if there has been an invasion of property rights under the guise of this power, without justifying occasion, or in an unreasonable, arbitrary, and oppressive way, to give to the injured party that protection which the Constitution secures." * *

It is well settled that matters of policy and of the wisdom of regulations coming within the police power are for legislative rather than judicial determination. "The question as to whether an act of the Legislature of this state will serve a public use or purpose is, in the first instance, a question for the determination of the Legislature, and that determination or decision cannot be reviewed and the contrary determined by the judiciary except in instances where the legislative determination of the question is palpably and manifestly arbitrary and incorrect." Neal v. Boog-Scott, Tex. Civ.App., 247 S.W. 689, 691.

■ Courts are thus reluctant to disturb legislative action if the subject matter involved lies within the police power and will not do so unless it clearly appears that the regulation is unnecessary and unreasonable and not justified by the facts. If there is room for a fair difference of opinion as to the necessity and reasonableness of a legislative enactment or ordinance on a subject which lies within the police power, the courts will not hold it void. 16 C.J.S. Constitutional Law § 198, page 569. As a practical matter, if this were not the rule, legislative bodies would be without power to legislate in all cases involving police power where there was room for a difference of opinion as to the wisdom and necessity therefor, except subject to the approval of a jury. But courts, in such cases, will not substitute the opinion of a jury for that of the leg-

islative body.' City of Coleman v. Rhone, 222 S.W.2d 646, Tex.Civ.App., Eastland, writ ref. (1949)."

We are of the opinion that there is no room for a fair difference of opinion as to whether the quoted portions of Art. 734a, P.C., are reasonable and necessary to accomplish the purpose of protecting the public health or welfare. In our opinion, under this record, these sections of the law are arbitrary, unnecessary and unreasonable and have no relation to the public health or welfare. In fact, we believe that such statutes have an adverse effect on the public welfare. It is necessary to train barbers in order that they may safely and sanitarily perform their work. In order to train barbers, it is indispensable that they have the opportunity to practice. In order to obtain this practice, it is necessary that persons to practice on must be available. This means that a barber college must be strategically located and of a size small enough that each student will have the opportunity to practice. A large college is self-defeating, and the larger the college the more likelihood that patronage sufficient to afford practice to all the students will be lacking.

We are also of the opinion that enforcement of these provisions will, as illustrated here, result in oppression not commensurate with any conceivable benefits to the public welfare.

■ We are also of the opinion that these portions of Art. 734a, P.C., if valid, are not retroactive and do not apply to authorized schools or colleges in being when they became effective. The rule to be applied is stated in 12 Tex.Jur.2d, Constitutional Law, Sec. 122, p. 471, as follows:

"It is presumed that the legislature intends a statute to operate prospectively rather than retrospectively, and, unless the enactment is made retroactive in clear terms, this presumption will be given effect."

Mellinger v. City of Houston, 68 Tex. 37, 3 S.W. 249, (1887) uses similar language. See Crawford, Statutory Construction, Sec. 277.

We find nothing in the relevant statutes indicating "in clear terms" that the provisions of Art. 734a, P.C., directly in issue here, should apply to barber colleges previously issued permits by the Board.

Sec. 30 of Art. 734a is a severability section providing that partial invalidity of the Act shall not affect the validity of other sections. Our decision here with respect to the quoted provisions of Sec. 9, sub-paragraphs (c) (1) (3) and (8) is limited to those provisions and does not in any way affect other portions of Art. 734a.

The judgment of the trial court is reversed and judgment is here rendered reinstating appellants' permit to operate Beaumont Barber College Branch at 3246 Avenue A in Beaumont, Texas, and enjoining the Board from interfering with such operation because of noncompliance with the quoted provisions of Sec. 9, sub-paragraphs (1) (3) and (8) of Art. 734a, P.C.

Reversed and rendered.