**TEXAS STATE BOARD OF BARBER EXAMINERS et al., Petitioners,**

**v.**

**BEAUMONT BARBER COLLEGE, INC. et al., Respondents.**

**No. B–1968.**

Supreme Court of Texas.

May 27, 1970.

Crawford C. Martin, Atty. Gen., John H. Banks, Asst. Atty. Gen., Austin, for petitioners.

Carl R. Griffith, Beaumont, for respondents.

STEAKLEY, Justice.

This case presents questions of the enforceability of subsections (c) (1), (3) and (8) of Sec. 9 of Art. 734a, Vernon's Ann. P.C., against the branch barber college of respondent, Beaumont Barber College, Inc. Petitioner, the Texas State Board of Barber Examiners, revoked the permit of the branch college because of non-compliance with these statutory provisions and this action was sustained by the trial court. The court of civil appeals was of the view that the statutory requirements constituted an unreasonable exercise of the police power; but, if not, that they are inapplicable. 448 S.W.2d 498. We are not in agreement with either holding of the intermediate court.

The statutory provisions invoked by the Board were among those included in a comprehensive amendment by the Legislature in 1961[1] of Sec. 9 of Art. 734a, the Texas Barber Law, pertaining to the regulation of barber colleges. Subsection (c) of Sec. 9 was amended to provide:

"(c) No barber school or college which issues 'Class A' certificates shall be approved by the Board for the issuance of a permit unless said school or college has the following:

(1) An adequate school site housed in a substantial building of a permanent-type construction containing a minimum of not less than two thousand, eight hundred (2,800) square feet of floor space. Such space shall be divided into the following separate departments: a senior department, a junior department, a class theory room, a supply room, an office space, a dressing and cloak room, and two (2) sanitary, modern separate rest rooms, equipped with one (1) commode each and a urinal in one (1) rest room.

(2) A hard-surface floor covering of tile or other suitable material.

(3) A minimum of twenty (20) modern barber chairs with cabinet and mirror for each chair.

(4) One (1) lavatory in back of each two (2) chairs.

(5) A liquid sterilizer for each chair.

(6) An adequate number of latherizers, vibrators, and hair dryers for the use of students.

(7) Adequate lighting of all rooms.

(8) At least twenty (20) classroom chairs, a blackboard, anatomical charts of the head, neck and face, and one (1) barber chair in the class theory room.

(9) A library and library facilities available to students, containing a medical dictionary and a standard work on the human anatomy.

(10) Adequate drinking fountain facilities, but at least one (1) to each floor.

(11) Adequate toilet facilities for the students.

(12) Adequate fire-fighting equipment to be maintained in case of emergency."

At the time the amendatory Act became effective in 1961, Beaumont Barber College,

1. Acts 1961, 57th Leg., Ch. 287, p. 601.

Inc. was conducting a barber college in downtown Beaumont, Texas which met the statutory requirements and a branch barber college in a community center which did not. The permit of the branch college was renewed annually but its facilities were not brought into compliance with the statute. Under date of August 10, 1967 the Board revoked the current permit of the branch college for the stated reasons that it was being conducted in violation of subsections (c) (1), (3) and (8) of § 9 of Art. 734a. It was found by the Board, and is not disputed, that the branch college only contained approximately 1000 square feet of floor space with only 12 barber and 12 classroom chairs. Beaumont Barber College, Inc. instituted this suit as an appeal from the order of revocation. It was stipulated that its case would be submitted to the court upon the record before the Board in the revocation hearing, together with certain additional exhibits consisting of the original certificate of approval issued to the branch college in 1959, the currently effective permit and the order of the Board under which it was revoked. The record before the Board consisted of the testimony of its executive secretary and of Mr. J. C. Quinn, the then president of respondent. The somewhat inconclusive character of the testimony of the executive secretary of the Board is illustrated by the excerpts quoted in the opinion of the intermediate court. Mr. Quinn testified that the investment of the corporation in the branch college was approximately $16,000; that the branch is conducted in leased property but he did not know when the lease would expire; that he could train the branch college students at the downtown school; that having the two locations increased "floor trade" and his charge for a haircut at the branch by the student barbers was one-half that charged at regular barber shops in Beaumont; that he does not believe the space and chair requirements of the statute "would in any way upgrade the quality of students or profession or people that you're turning out up there * * *"

■ The regulation of the occupation of barbering is necessary to the public health and a proper subject for the exercise of the police power. Gerard v. Smith, 52 S.W. 2d 347 (Tex.Civ.App.1932, writ ref'd); Lackey v. State Board of Barber Examiners, 113 S.W.2d 968 (Tex.Civ.App.1938, no writ); State Board of Barber Examiners v. Comer, 109 S.W.2d 1012 (Tex.Civ.App. 1937, no writ). This includes the regulation of barber colleges who offer a barber service to the general public in connection with the training of their students. This is not questioned by respondent. Its position is that the 1961 Act does not apply to its existing branch college but that if it does, the statute violates § 16 of Art. 1 of the Texas Bill of Rights, Vernon's Ann.St., as a retroactive law and one which impairs the obligations of contracts; and, finally, that the statutory requirements in question are an unreasonable—and hence invalid—exercise of the police power.

■ The 1961 Act contains no "grandfather" clause permitting the continued operation of existing barber colleges without compliance with the newly established statutory requirements. That this was deliberate legislative action is indicated by the provision in subsection (f) of § 9 of Art. 734a for persons then engaged in teaching in a barber school or college to establish an exemption from the newly required examination for a teacher's certificate. Moreover, subsection (c) unequivocally states that "no barber school or college which issues 'Class A' certificates shall be approved by the Board for the issuance of a permit * * *" unless it has the specified housing and facilities; subsection (h) makes it mandatory for a school or college to obtain an annual renewal of its permit and further clearly states that "no such school or college shall be operated and no student shall be solicited or enrolled by it until the Board shall determine that the school has been set up and established in accordance with this Section and the proposal submitted to the Board

and approved by it prior to the issuance of a permit * * *"; subsection (*l*) requires the Board to revoke a permit once issued in event the school or college "violates any of the requirements of this law, either directly or indirectly * * *"; and subsection (m) authorizes injunction proceedings "to enforce the provisions of this Act, and to enjoin any * * * school or college from operating without having complied with the provisions hereof, * * *." The caption of the amendatory Act expressly recites the legislative purpose of "changing the existing provisions relating to the licensing and operation of barber schools and colleges * * *"; and one of the emergency purposes of the legislation was stated to be "the fact that there have heretofore been inadequate legislative standards set up governing the operation of barber schools and colleges, * * *." The conclusion is compelled, we think, that the newly enacted requirements for a barber school or college were intended to apply to barber colleges then in existence.

■■■ The original Texas Barber Law enacted in 1929[2] and as amended in 1930[3], subjected barber schools and colleges to regulation in various particulars in an exercise of the police power. Respondent obtained permits to operate its main and branch colleges pursuant to these statutes. It did not thereby obtain a constitutionally protected vested right of immunity from further or different statutory regulation. Its right is one of protection against impositions beyond legislative authority, i. e. those which are shown to constitute an unreasonable exercise of the police power. This is the real question in the case and is not free of difficulties. It is to be resolved in the light of settled principles. The burden is upon one who attacks a law for unconstitutionality. Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627 (1939). It was there said, and repeated in Smith v. Davis, 426 S.W.2d 827 (Tex.Sup.1968) that "There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." It is not the function of the courts to judge the wisdom of a legislative enactment. State v. Spartan's Industries, Inc., 447 S.W.2d 407 (Tex.Sup.1969). The necessity or reasonableness of particular regulations imposed under the police power is a matter addressed to the legislative department whose determination in the exercise of a sound discretion is conclusive upon the courts. Legislative enactments will not be held unconstitutional and invalid unless it is absolutely necessary to so hold. Smith v. Patterson, 111 Tex. 535, 242 S.W. 749 (1922); see also State v. Brownson, 94 Tex. 436, 61 S.W. 114 (1901) and Lytle v. Halff, 75 Tex. 128, 12 S.W. 610 (1889).

■■■ We cannot say that the record before the Board in the revocation hearing upon which respondent relies establishes the invalidity of the statutory requirements as unreasonable or inappropriate, or overcomes the presumption of validity which attaches to legislative acts in an exercise of the police power. Nor can we say that the floor space and equipment which the Legislature has said a barber college must have bears no reasonable relationship to the public health, comfort, safety or welfare. A barber college offers barber service to the public at the hands of student barbers at reduced prices and the Legislature may very well have written the requirements in question for the purpose of making obvious to the public that the service is one performed in a barber college by college students and not in a regular barber shop. Moreover, there is no showing that the requirement of the various separate departments—a senior department, a junior department, a class theory room, a

---

2. Acts 1929, 41st Leg., 1st Spec.Sess., ch. 65, p. 166.

3. Acts 1930, 41st Leg., 5th Spec.Sess., ch. 15, p. 134.

supply room, an office space, a dressing and cloakroom, and two separate rest rooms —is unreasonable for a college or that the required floor space of 2800 square feet is more than necessary for the accommodation of the separate departments. Nor can we say that the required separation of departments, and the space necessary to do so, are not likely to contribute to sanitation and the lessening of contagions. Uniformity of standards is itself a desirable factor in a field of proper regulation and this was no doubt a consideration in fixing the legislative requirements. There may be differences of opinion concerning the necessity or desirability of the regulations under review but this does not afford a sufficient basis for the courts to strike down the legislation as arbitrary or unreasonable.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.