OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

June 24, 2002

The Honorable Warren Chisum
Chair, House Committee on
  Environmental Regulation
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0515

Re: Whether the provisions of House Bill 2912 on regulated entities' compliance history authorize the Texas Natural Resource Conservation Commission to consider compliance history that occurred prior to February 1, 2002 (RQ-0482-JC)

Dear Representative Chisum:

      Your questions relate to House Bill 2912 of the Seventy-seventh Legislature, which continues the Texas Natural Resource Conservation Commission (the "TNRCC" or "Commission") following review under the Texas Sunset Act. *See* Act of May 27, 2001, 77th Leg., R.S., ch. 965, 2001 Tex. Gen. Laws 1933. *See also* TEX. GOV'T CODE ANN. ch. 325 (Vernon 1998 & Supp. 2002) (Texas Sunset Act). You inquire whether the provisions of House Bill 2912 regarding the compliance history of regulated entities, in particular, section 18.05(i) of the enactment, permit the TNRCC to consider compliance history that occurred before February 1, 2002.[1] We conclude that the Commission has authority under House Bill 2912 to consider compliance history of regulated entities that dates from five years prior to the time the Commission's regulatory authority is initiated or invoked, including compliance history from before February 1, 2002. You also state that any provisions of House Bill 2912 authorizing the Commission to define compliance history to encompass facts dating from before February 1, 2002 would be retroactive and unconstitutional under article I, section 16 of the Texas Constitution. We need not decide whether these provisions impair a vested right. They protect the public health, safety, and welfare, and accordingly are not facially violative of article I, section 16 of the Texas Constitution.

      We first consider whether compliance history under House Bill 2912 includes pre-February 1, 2002 events. Even before the Seventy-seventh session, the Legislature required the Commission to consider a regulated entity's compliance history in some of its decisions. For example, if "an applicant's compliance history for the preceding five years" raised an issue regarding the applicant's ability to comply with material terms of a solid waste disposal permit, the Commission was to provide an opportunity to request a contested case hearing. *See* Act of May 18, 1989, 71st Leg.,

---

      [1]Letter from Honorable Warren Chisum, Chair, House Committee on Environmental Regulation, to Honorable John Cornyn, Texas Attorney General at 1 (Dec. 18, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2635, *amended by* Act of May 27, 1991, 72d Leg., R.S., ch. 296, § 1.14, 1991 Tex. Gen. Laws 1235, 1248 (formerly TEX. HEALTH & SAFETY CODE ANN. § 361.088(f) (2000)). However, compliance history was not clearly defined and how it was used varied among the Commission's air, water, and waste programs. *See* SUNSET ADVISORY COMM'N, STAFF REPORT: TEX. NATURAL RES. CONSERVATION COMM'N at 23 (2000); *see also* Act of May 30, 1999, 76th Leg., R.S., ch. 1350, § 5, 1999 Tex. Gen. Laws 4570, 4573-75 (formerly TEX. HEALTH & SAFETY CODE ANN. § 382.056(e) (2000)) (authority to hold a hearing under the Clean Air Act on a permit amendment, modification, or renewal based on compliance history); Act of May 19, 1999, 76th Leg., R.S., ch. 795, § 1, 1999 Tex. Gen. Laws 3419 (formerly TEX. WATER CODE ANN. § 26.028(d)(4) (2000)) (Commission to consider applicant's compliance history for the preceding five years in deciding whether to grant wastewater discharge permit without a public hearing); Act of May 27, 1985, 69th Leg., R.S., ch. 566, § 16, 1985 Tex. Gen. Laws 2166, 2182-83 (formerly TEX. WATER CODE ANN. § 27.051(d)-(e) (2000)) (considering compliance history to determine whether use of injection well for disposal of hazardous waste is in the public interest). The Sunset Advisory Commission staff recommended that the Legislature require the Commission to develop a common definition for compliance history through rulemaking, to track and report the compliance history of all regulated entities, and to develop a performance assessment that differentiated regulated entities based on compliance performance. SUNSET ADVISORY COMM'N, STAFF REPORT: TEX. NATURAL RES. CONSERVATION COMM'N at 23, 27 (2000). The Legislature included in House Bill 2912 provisions that "taken together, [would] require the Commission to establish a performance regulatory structure using a uniform standard for evaluating compliance history to guide permit and enforcement decisions, and to determine eligibility for participation in innovative programs." SUNSET ADVISORY COMM'N, SUMMARY OF SUNSET LEGISLATION, 77TH LEGISLATURE at 35 (2001).

The substantive provisions on compliance history are codified as Water Code subchapter Q, consisting of sections 5.751 through 5.758, and the transition and effective date provisions applicable to the compliance history sections are found in section 18.05 of House Bill 2912. *See* Act of May 27, 2001, 77th Leg., R.S., ch. 965, art. 4, § 4.01, art. 18, § 18.05, 2001 Tex. Gen. Laws 1933, 1950-53, 1986-87. While your question refers only to a transition provision, section 18.05(i) of House Bill 2912, a discussion of the other provisions is necessary to provide a context for addressing it.

Subchapter Q applies to programs under the jurisdiction of the Commission under Water Code chapters 26 and 27, and Health and Safety Code chapters 361, 382, and 401. TEX. WATER CODE ANN. § 5.751 (Vernon Supp. 2002). These are programs under the Solid Waste Disposal Act, the Clean Air Act, the Radiation Control Act, the water quality control law, and the Injection Well Act. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 361.001, 382.001, 401.0005 (Vernon 2001); TEX. WATER CODE ANN. §§ 26.003 (Vernon Supp. 2002), 27.001 (Vernon 2000). Section 5.753 of the Water Code provides that "[c]onsistent with other law and the requirements necessary to maintain federal program authorization, the commission by rule shall develop a uniform standard for evaluating compliance history." TEX. WATER CODE ANN. § 5.753(a) (Vernon Supp. 2002). The components of compliance history must include:

　　　　　　(1) enforcement orders, court judgments, consent decrees, and criminal convictions of this state and the federal government relating to compliance with applicable legal requirements under the jurisdiction of the commission or the United States Environmental Protection Agency;

　　　　　　(2) notwithstanding any other provision of this code, orders issued under Section 7.070;[2]

　　　　　　(3) to the extent readily available to the commission, enforcement orders, court judgments, and criminal convictions relating to violations of environmental laws of other states; and

　　　　　　(4) changes in ownership.

*Id.* § 5.753(b) (footnote added). The set of components must also include "any information required by other law or any requirement necessary to maintain federal program authorization" and "notices of violations" ( "NOVs"), although a notice of violation "administratively determined to be without merit shall not be included in a compliance history," and a notice of violation included in a compliance history "shall be removed from the compliance history if the commission subsequently determines the notice of violation to be without merit." *Id.* § 5.753(c)-(d). Finally, section 5.753 provides that the Commission "by rule shall establish a period for compliance history" except as required by other law or any requirement necessary to maintain federal program authorization. *See id.* § 5.753(e).

　　　　The Commission must "[n]ot later than February 1, 2002," establish by rule "the components of compliance history, as required by Section 5.753, Water Code" and the Commission has promulgated rules doing so. Act of May 27, 2001, 77th Leg., R.S., ch. 965, art. 18, § 18.05(a), 2001 Tex. Gen. Laws 1933, 1986. *See* 27 Tex. Reg. 191, 262 (2002) (to be codified at 30 TEX. ADMIN. CODE § 60.1) (Tex. Natural Res. Conservation Comm'n). You are concerned that the Commission's rule establishes a period for compliance history that is inconsistent with section 18.05(i) of House Bill 2912. The compliance history period established by rule

　　　　　　includes the five years prior to the date the permit application is received by the executive director; the five-year period preceding the date of initiating an enforcement action with an initial enforcement settlement offer or the filing date of an Executive Director's

---

[2]Water Code section 7.070 deals with agreed orders compromising or settling an alleged violation of a statute, rule, order, or permit. An agreed administrative order may state that it is not intended to become a part of a party's or facility's compliance history. *See* TEX. WATER CODE ANN. § 7.070(3) (Vernon 2000).

Preliminary Report (EDPR),[3] whichever occurs first; for purposes of determining whether an announced investigation is appropriate, the five-year period preceding an investigation; or the five years prior to the date the application for participation in an innovative program is received by the executive director.

*Id.* at 262 (footnote added) (to be codified at 30 TEX. ADMIN. CODE § 60.1(b)). This rule provides that compliance history includes relevant events during the five-year period before the Commission's regulatory authority is initiated or invoked. *See id.* at 210. Pursuant to this rule, the Commission may look back to components of compliance history that occurred during the previous five years, including compliance history occurring before February 1, 2002. *Id.* There are some exceptions to the five-year time period. With respect to orders developed under section 7.070 of the Water Code, compliance history includes only those approved by the Commission on or after February 1, 2002. *Id.* at 262 (to be codified at 30 TEX. ADMIN. CODE § 60.1(c)(2)). Compliance history includes "all written notices of violation . . . issued on or after September 1, 1999, except for those administratively determined to be without merit." *Id.* at 262 (to be codified at 30 TEX. ADMIN. CODE § 60.1(c)(7)). Thus, the Commission has established a compliance period of five years, with certain exceptions to its "five-year backward look at compliance history components." *See* 27 Tex. Reg. 2934 (2002) (comments in connection with rule-making process under Water Code section 5.754).

While section 5.753 of the Water Code requires the Commission to establish the components of compliance history, section 5.754 governs the Commission's use of a regulated entity's compliance history in the regulatory process. The Commission must adopt rules under section 5.754 by September 1, 2002. *See* Act of May 27, 2001, *supra,* § 18.05(b), 2001 Tex. Gen. Laws 1933, 1986. The Commission's proposed rules for this section have been published. *See* 27 Tex. Reg. 2930 (2002) (to be codified at 30 TEX. ADMIN. CODE §§ 60.2, .3) (proposed Apr. 12, 2002).

Section 5.754 of the Water Code requires the Commission to adopt rules for classifying a regulated entity's compliance history to distinguish among entities that are

(1) poor performers, or regulated entities that in the commission's judgment perform below average;

(2) average performers, or regulated entities that generally comply with environmental regulations; and

(3) high performers, or regulated entities that have an above-average compliance record.

TEX. WATER CODE ANN. § 5.754(a)-(b) (Vernon Supp. 2002). *See also id.* § 5.754(c) (requirements for Commission in classifying compliance history), (d) (Commission shall establish methods of

---

[3]The executive director's preliminary report is a pleading filed by the executive director, which, when issued and served, seeks an enforcement order against a respondent. 30 TEX. ADMIN. CODE § 70.2(2) (2001).

assessing compliance history when it does not have adequate compliance information, such as compliance inspection). The rules must provide for "the use of compliance history classifications in commission decisions" regarding

> (1) the issuance, renewal, amendment, modification, denial, suspension, or revocation of a permit;
>
> (2) enforcement;
>
> (3) the use of announced inspections; and
>
> (4) participation in innovative programs.

*Id.* § 5.754(e). They must also "provide for additional oversight of, and review of applications regarding, facilities owned or operated by a person whose compliance performance is in the lowest classification developed under this section." *Id.* § 5.754(g). The rules must prohibit a person whose compliance history is classified in the lowest classification from receiving an announced inspection, obtaining or renewing a flexible permit under the program administered by the Commission under the Clean Air Act, or participating in the regulatory flexibility program administered by the Commission under section 5.758 of the Water Code. *Id.* § 5.754(h). *See also id.* § 5.754(f) (rules shall establish enhanced administrative penalties for repeat violators), (i) (Commission shall consider regulated entity's compliance history when determining whether to grant application for a permit or permit amendment for any activity under the Commission's jurisdiction to which subchapter Q applies). Thus, depending on the facts of a regulated entity's compliance history, it may have an important bearing on certain of the Commission's decisions about the entity.

We next address section 18.05 of House Bill 2912, which phases in the compliance history program mandated by the Legislature. We have already seen that subsection 18.05(a) requires the Commission to adopt rules under section 5.753 of the Water Code, establishing components of compliance history by February 1, 2002, and subsection 18.05(b) requires the Commission to adopt rules under section 5.754 of the Water Code, establishing standards for the classification and use of compliance history by September 1, 2002. *See* Act of May 27, 2001, *supra*, § 18.05(a), (b), 2001 Tex. Gen. Laws 1933, 1986. Because your question about subsection (i) turns on differences in language between subsection (i) and subsections (f), (g), (h), and (j), we quote these provisions in full:

> (f) The changes made by this Act in the consideration of compliance history in decisions by the Texas Natural Resource Conservation Commission relating to the issuance, amendment, modification, or renewal of permits under the following sections apply only to an application for the issuance, amendment, modification, or renewal of a permit submitted to the Texas Natural Resource Conservation Commission on or after September 1, 2002:

(1) [Water Code provisions applicable to permits under Water Quality Control Act and Injection Well Act].

(2) [Health and Safety Code provisions on application for hazardous waste disposal permit, preconstruction permit under Clean Air Act, and licensing of processing and disposal of radioactive substances].

(g) For the purposes of consideration of compliance history in decisions by the Texas Natural Resource Conservation Commission relating to the issuance, amendment, modification, or renewal of a permit under the sections listed under Subsection (f) of this section, an application submitted before September 1, 2002, is governed by the law as it existed immediately before September 1, 2001, and the former law is continued in effect for that purpose.

(h) The changes made by this Act in the consideration of compliance history in decisions by the Texas Natural Resource Conservation Commission relating to inspections and flexible permitting under Subchapter Q, Chapter 5, Water Code, as added by this Act apply, effective September 1, 2002, to an action taken by the Texas Natural Resource Conservation Commission that is subject to those sections.

(i) The changes made by this Act in the definition of compliance history apply to an action taken by the Texas Natural Resource Conservation Commission on or after February 1, 2002. An action taken by the Texas Natural Resource Conservation Commission before February 1, 2002, is governed by the law in effect on the date the action is taken, and the former law is continued in effect for that purpose.

(j) The changes made by this Act in the consideration of compliance history in decisions of the Texas Natural Resource Conservation Commission relating to the suspension or revocation of a permit or the imposition of a penalty in a matter under the jurisdiction of the commission apply only to a proceeding that is initiated or an action that is brought on or after September 1, 2002. A proceeding that is initiated or an action that is brought before September 1, 2002, is governed by the law in effect on the date the proceeding is initiated or action is brought, and the former law is continued in effect for that purpose.

*Id.* § 18.05(f)-(j).

You point out that subsection 18.05(i) "specifies that the new definition of compliance history applies to *actions* of the TNRCC on or after February 1, 2002," *see* Act of May 28, 2001, *supra*, § 18.05(b), 2001 Tex. Gen. Laws 1933, 1986, while the other subsections establish the date the Commission's *decisions* on specific matters will consider compliance history as changed by House Bill 2912 and the rules adopted thereunder. Request Letter, *supra* note 1, at 2-3 (emphasis in original). You read subsection (i) as specifying "the point in time when TNRCC *actions* (such as issuance of notices of violation, enforcement orders, etc.) are to be categorized according to the new compliance history definition." *Id.* at 3. You interpret the first sentence of subsection (i) as if it read as follows:

> The changes made by this Act in the definition of compliance history apply to an action [generating compliance history information about a regulated entity] taken by the Texas Natural Resource Conservation Commission on or after February 1, 2002.

According to your reading of subsection (i), it provides that the new definition of compliance history established pursuant to section 5.753 may be used to describe only those compliance history facts occurring after February 1, 2002. As a consequence of reading subsection (i) in this way, you conclude that the Commission may consider in its decisions subject to section 5.754 of the Water Code, only compliance history of a regulated entity occurring after February 1, 2002. *See id.* at 7.

Your interpretation is contrary to provisions of the Commission's rule, which establishes a time period for compliance history covering the five years before the Commission takes jurisdiction of a matter involving a regulated agency, and which allows the inclusion of pre-February 1, 2002 information in compliance history. The courts will generally defer to the construction of a statute by the administrative agency charged with its enforcement. *See Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000). *See also Bullock v. Hewlett-Packard Co.*, 628 S.W.2d 754, 756 (Tex. 1982) (administrative rules will be upheld if they are reasonable); *Browning-Ferris, Inc. v. Tex. Dep't of Health*, 625 S.W.2d 764, 767 (Tex. App.–Austin 1981, writ ref'd n.r.e.) (administrative rules presumed valid and the burden of demonstrating invalidity is on the challenging party). When subsection (i) is read in its entirety and in context, it may be given a reasonable meaning that does not involve the limitation you suggest.

Words in statutes are to be read in context and construed according to common usage, unless they have acquired a technical or particular meaning. *See* Tex. Gov't Code Ann. § 311.011 (Vernon 1998). The word "action" in common use is a broad term meaning "conduct" or "deed." I Oxford English Dictionary 127, 3.a (2d ed. 1989). *See also id.* at 128; *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995) (in some circumstances, "action" may have the narrower meaning of legal process or suit). The Legislature has adopted provisions using the term "action" as a general description of an administrative agency's powers and duties, ranging from rule-making powers to house-keeping functions. For example, in preparing to implement legislation that has not taken effect, "a state agency may adopt a rule or take other administrative action" that the agency determines is necessary or appropriate. Tex. Gov't Code Ann. § 2001.006(b) (Vernon 2000). Notice of "proposed state agency rules and state agency actions" is given through publication in the

Texas Register. *See id.* § 2002.002 (Texas Register shall contain, among other items, state agency organizational and personnel changes). State agencies that issue permits are required to make a report to the governor and legislature that must include, among other information, "specific actions taken by the agency" to simplify and improve its permit application, processing, and paperwork requirements. *Id.* § 2005.007. Thus, an "action" of a state agency in the general sense of the term may include internal changes necessary to administer new legislation or to respond to a change in workload.

The first sentence of subsection (i) provides that the new definition of compliance history applies to an action taken by the Commission on or after February 1, 2002, while the second sentence continues in effect the old law for an action taken by the Commission before February 1, 2002. We point out that the term "action" in this provision must mean something other than consideration of the new law on compliance history in Commission decisions under section 5.754 of the Water Code, because the Commission does not have that power until September 1, 2002. *See* Act of May 27, 2001, *supra*, § 18.05 (f), (h), (j), 2001 Tex. Gen. Laws 1933, 1986. We believe that "action" is used in the first sentence of subsection (i) in a broad, general sense to encompass the various ways the Commission might recognize and use the new definition of compliance history. An example of an "action" to be taken after February 1, 2002 that uses the new definition of compliance history is found in the Commission's rule on the components of compliance history: "Beginning February 1, 2002, the executive director shall develop compliance histories with the components specified in this chapter." *See* 27 Tex. Reg. 191, 262 (2002) (to be codified at 30 TEX. ADMIN. CODE § 60.1(a)(6)). Thus, the phrase "action taken" by the Commission may be given a reasonable meaning that is consistent with the rule adopted by the Commission.

It is also important to read subsection (i) in its context among other effective date and transition provisions. *See* Act of May 27, 2001, *supra*, art. 18, 2001 Tex. Gen. Laws 1933, 1985. September 1, 2001 is the general effective date of House Bill 2912, *see* Act of May 27, 2001, *supra*, § 18.15, 2001 Tex. Gen. Laws 1933, 1989, but section 18.05 establishes delayed effective dates for implementing provisions of Water Code, subchapter Q, and rules adopted thereunder. *See id.* § 18.05(f), (h), (j) (establishing September 1, 2002 effective date for the changes in considering compliance history in Commission's decisions under certain permitting statutes, under provisions relating to inspections and flexible permitting, and under provisions on the suspension or revocation of a permit or the imposition of a penalty). Transition provisions, such as delayed and staggered effective date provisions, provide for the orderly implementation of legislation. *See* TEX. LEGISLATIVE COUNCIL DRAFTING MANUAL § 3.12(a) (2000) (saving and transition provisions). Corresponding to the effective date provisions in section 18.05, there are savings clauses, which continue former law in effect for certain purposes. *See Firemen's Pension Comm'n v. Jones*, 939 S.W.2d 730, 733 (Tex. App.–Austin 1997, no writ); 1A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 21.12 (6th ed. 2002) (a savings clause is an exemption from general operation of the statute, employed to restrict repealing acts and to continue repealed acts in force as to pending proceedings); Act of May 27, 2001, *supra*, § 18.05(g), (j), 2001 Tex. Gen. Laws 1933, 1986 (savings clauses continuing prior law on consideration of compliance history for decisions under the statutes enumerated in subsection (f) and decisions on the suspension or revocation of a permit or the imposition of a penalty on an application submitted before September 1, 2002).

Subsection 18.05(i), like other provisions in section 18.05 of House Bill 2912, consists of a deferred effective date, providing that the Commission shall begin to use the changed definition of "compliance history" on February 1, 2002, and a savings clause, which continues in effect the former law defining "compliance history" for actions taken by the Commission prior to February 1, 2002. The Commission established the components of compliance history, including the time period, in its rule adopted pursuant to section 5.753 of the Water Code. Subsection 18.05(i) states when the new definition of compliance history becomes effective and how the Commission may use it. There is no express limit in subsection 18.05(i) or elsewhere in section 18.05 on how the various components of compliance history may be defined. The February 1, 2002 effective date applies to the definition of compliance history as a whole, including the time period component. We conclude that the Commission rule defining compliance history as the five-year period before the Commission's regulatory authority is initiated or invoked, *see* 27 Tex. Reg. 191, 262 (2002) (to be codified at 30 TEX. ADMIN. CODE § 60.1(b)), including compliance history that occurred before February 1, 2002, is not inconsistent with subsection 18.05(i) of House Bill 2912.

You believe that any provisions of House Bill 2912 authorizing the Commission to include compliance history that occurs before February 1, 2002 would be retroactive and unconstitutional under article I, section 16 of the Texas Constitution. This constitutional provision states that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16. Under this provision, retroactive laws affecting legally recognized or secured vested rights are invalid. *See Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 633 (Tex. 1996) (citing *Tex. Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 648-49 (Tex. 1971)).

You maintain that two particular components of compliance history are retroactive in violation of article I, section 16 of the Texas Constitution: notices of violation issued before February 1, 2002 and "no findings" orders issued under Water Code section 7.070. Request Letter, *supra* note 1, at 3, 5. The Commission's rule, however, defines these components so that they do not raise an issue of retroactivity. We will first address these components of compliance history and then consider whether other provisions of House Bill 2912 violate article I, section 16.

You state that TNRCC inspectors in many situations issue notices of violations that are mistaken or inaccurate, but that are minor and not worth the regulated entity's time or expense to contest. *Id.* at 5. Thus, you are concerned about including in compliance history any notices of violation issued before February 1, 2002. Section 5.753, however, provides that "[a] notice of violation administratively determined to be without merit shall not be included in a compliance history," and a notice of violation included in compliance history "shall be removed from the compliance history if the commission subsequently determines the notice of violation to be without merit." TEX. WATER CODE ANN. § 5.753(d) (Vernon Supp. 2002). The Commission's rule provides that compliance history includes "all written notices of violation, including written notification of a violation from a regulated person, issued on or after September 1, 1999, except for those administratively determined to be without merit." 27 Tex. Reg. 262 (2002) (to be codified at 30 TEX. ADMIN. CODE § 60.1(c)(7)). The statute and the rule allow the regulated entities to protect their

interests, thus providing a remedy for the retroactivity problem you raise. *See generally Tex. Water Rights Comm'n v. Wright,* 464 S.W.2d 642, 648-49 (Tex. 1971).

Section 7.070 of the Water Code relates to an agreed administrative order that may be issued by the Commission in a penalty proceeding. It provides that the Commission is not required to make findings of fact or conclusions of law other than an uncontested finding that the Commission has jurisdiction in an agreed order compromising or settling an alleged violation of a statute, a rule, an order, or permit. An agreed order may include a reservation that it "is not intended to become a part of a party's or a facility's compliance history." TEX. WATER CODE ANN. § 7.070(3) (Vernon 2000). The Commission's rule establishing the components of compliance history provides that compliance history includes only "orders developed under . . . [Water Code] § 7.070 and approved by the commission on or after February 1, 2002." 27 Tex. Reg. 262 (2002) (to be codified at 30 TEX. ADMIN. CODE § 60.1(c)(2)). Orders issued under section 7.070 before February 1, 2002, are not to be included in an entity's compliance history. *Id.* at 229. Thus, this aspect of compliance history does not raise an issue of retroactivity.

We next consider the Commission's inclusion of pre-February 1, 2002 information in compliance history and whether provisions authorizing this decision are retroactive in violation of article I, section 16 of the Texas Constitution. In *Barshop,* 925 S.W.2d at 633-34, the Texas Supreme Court addressed retroactivity in connection with the Edwards Aquifer Act (the "Act"). Landowners, asserting that the Act was unconstitutional on its face, challenged it under article I, section 16 and other constitutional provisions. The Act, adopted in 1993, established a permit system for allocating water among landowners that gave preference to "existing users" who filed a declaration of historical use and who could "establish, by convincing evidence, beneficial use of the water withdrawn between June 1, 1972 and May 31, 1993." *Id.* at 624; *see* Act of May 30, 1993, 73d Leg., R.S., ch. 626, 1993 Tex. Gen. Laws 2355, *as amended by* Act of May 29, 1995, 74th Leg., R.S., ch. 261, 1995 Tex. Gen. Laws 2350, 2505. The plaintiffs argued that the Act was retroactive because the amount of water a landowner was allowed to withdraw was determined from action or inaction taken before the passage, signing, or effective date of the Act. *Barshop,* 925 S.W.2d at 633. The Texas Supreme Court stated that the plaintiffs were correct that the Act might have retroactive effects. It referred to its decision in *Texas Water Rights Commission v. Wright,* 464 S.W.2d 642, 648-49 (Tex.1971), that a statute which allows an agency to take into consideration conduct occurring before the effective date of the statute possesses a retroactive effect. The court then stated as follows:

> The Edwards Aquifer Act, similar to the statute in *Wright* that was held to be retroactive, takes into account the landowner's use of water in the years preceding the effective date of the legislation in determining future entitlement to water. However, "[m]ere retroactivity is not sufficient to invalidate a statute." A valid exercise of the police power by the Legislature to safeguard the public safety and welfare can prevail over a finding that a law is unconstitutionally retroactive.

*Barshop*, 925 S.W.2d at 633-34 (quoting *Wright*, 464 S.W.2d at 648) (citations omitted). The court cited numerous judicial decisions in support of this statement. *See Tex. State Teachers Ass'n v. State*, 711 S.W.2d 421, 424 (Tex. App.–Austin 1986, writ ref'd n.r.e.) (the rule against retroactive laws is not absolute and should yield to a state's right to safeguard the public safety and welfare); *Ismail v. Ismail*, 702 S.W.2d 216, 222 (Tex. App.–Houston [1st Dist.] 1985, writ ref'd n.r.e.) ("overriding public interest" justified the retroactive application of a special class of marital property); *Kilpatrick v. State Bd. of Registration for Prof'l Eng'rs*, 610 S.W.2d 867, 871 (Tex. Civ. App.–Fort Worth 1980, writ ref'd n.r.e.) (concern for public safety and welfare can override retroactive law prohibition); *State Bd. of Registration for Prof'l Eng'rs v. Wichita Eng'g Co.*, 504 S.W.2d 606, 608 (Tex. Civ. App.–Fort Worth 1973, writ ref'd n.r.e.) (same); *Caruthers v. Bd. of Adjustment*, 290 S.W.2d 340, 345 (Tex. Civ. App.–Galveston 1956, no writ) (zoning ordinance was not unconstitutionally retroactive because it was justified by the police power). *See also generally Tex. State Bd. of Barber Exam'rs v. Beaumont Barber Coll., Inc.*, 454 S.W.2d 729, 732 (Tex. 1970) (barber college challenging statute as a retroactive law merely had right of protection from unreasonable exercise of police power).

The court noted that its decision in *Wright* had upheld a statute with retroactive effect on the basis of provisions providing time for the landowners to protect their interest. *See Barshop*, 925 S.W.2d at 634 (discussing *Wright*, 464 S.W.2d at 648). However, *Wright* had not addressed the issue of "whether the prohibition against retroactive laws precludes the Legislature from enacting statutes that are necessary to safeguard the public safety and welfare." *Id.* at 634. The court concluded in *Barshop* that the retroactive effect of the Edwards Aquifer Act did not render it unconstitutional. *Id.* Thus, a valid exercise of the police power by the Legislature to safeguard the public safety and welfare can prevail over a finding that a law is unconstitutionally retroactive. *Id.* at 634. *See also In re A.V.*, 57 S.W.3d 51, 60 (Tex. App.–Waco 2001, pet. filed) (the public policy exception validates a retroactive law which is necessary to safeguard public safety and welfare).

We need not decide whether a regulated entity has a vested right to have its compliance history determined according to the law in effect when the relevant events took place. *See generally Indus. Found. of the South v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 677-78 (Tex. 1976) (Open Records Act, which applied to information compiled by governmental bodies prior to its effective date, did not impair any vested right to confidentiality of persons who furnished information to governmental agencies expecting access to be restricted). Even if it does, the programs which use compliance history were adopted to protect the public health, safety, and welfare, *see* TEX. HEALTH & SAFETY CODE ANN. §§ 361.002, 382.002, 401.001 (Vernon 2001); TEX. WATER CODE ANN. §§ 26.003, 27.003 (Vernon Supp. 2002), and the Legislature is not precluded from enacting statutes that are necessary to safeguard these interests. Accordingly, the provisions of House Bill 2912 and of the Commission rule that define a regulated entity's compliance history to include facts dating from before the effective date of the statute and rule do not on their face violate the article I, section 16 prohibition against retroactive laws.

## S U M M A R Y

Section 5.753 of the Water Code, adopted by House Bill 2912 of the Seventy-seventh Legislature, requires the Texas Natural Resource Conservation Commission to establish the components of compliance history by rule. The provision of the Commission rule that establishes the time period for compliance history as five years before the agency's regulatory authority is initiated or invoked, including compliance history from before February 1, 2002, is consistent with section 5.753. The time period is also consistent with section 18.05(i) of House Bill 2912, an effective date provision applicable to the changes in the definition of compliance history made by section 5.753 and the rule implementing it.

It is unnecessary to decide whether a regulated entity has a vested right under article I, section 16 of the Texas Constitution to have its compliance history determined according to the law in effect when the relevant events took place. Even if such a right exists, the compliance history rule applies to programs designed to protect the public health, safety, and welfare, and the Legislature is not precluded by article I, section 16 of the Texas Constitution from enacting retroactive statutes that are necessary to safeguard these interests.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee