TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00057-CV






Appellants, Ashish Patel, Anverali Satani, Nazira Momin, Tahereh Rokhti,
Minaz Chamadia, and Vijay Lakshmi Yogi // Cross Appellants, Texas Department of
Licensing and Regulation; William H. Kuntz, Jr., in his official capacity, et. al.


v.


Appellees, Texas Department of Licensing and Regulation; William H. Kuntz, Jr., in his
official capacity, et al. // Cross Appellees, Ashish Patel, Anverali Satani, Nazira Momin,
Tahereh Rokhti, Minaz Chamadia, and Vijay Lakshmi Yogi 






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. D-1-GN-09-004118, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N


 

 These cross-appeals concern the constitutionality of cosmetology statutes and
administrative rules as they apply to eyebrow threading. See Tex. Occ. Code Ann. §§ 1601.002,
1601.251, 1602.002, 1602.251, 1602.403 (West 2004 & Supp. 2011); 16 Tex. Admin. Code
§§ 83.1-83.120 (2011) (Tex. Dep't of Licensing and Regulation, Cosmetologists). Appellants
Ashish Patel, Anverali Satani, Nazira Momin, Tahereh Rokhti, Minaz Chamadia, and Vijay Lakshmi
Yogi, who are in the business of eyebrow threading, urge that eyebrow threading regulations
unreasonably interfere with their constitutional right to economic liberty under article I, section 19
of the Texas Constitution. See id.; Tex. Const. art. I, § 19. (1) 

 Facing competing motions for summary judgment, the district court granted summary
judgment in favor of appellees the Texas Department of Licensing and Regulation (the Department),
the Department's executive director, the Texas Commission on Licensing and Regulation (the
Commission), and the Commission's members. On appeal, appellants contend that the district court
erred in its summary judgment rulings and that it abused its discretion by admitting portions of
an affidavit. The state defendants cross appeal, challenging the denial of their plea to the
jurisdiction and motion to strike expert testimony. For the reasons that follow, we affirm the district
court's judgment.


BACKGROUND

 Eyebrow threading is a facial hair removal technique using a single strand of cotton
thread. (2) Appellants Patel and Satani have ownership interests in eyebrow threading businesses, and
the remaining appellants are individuals who are or were employed as eyebrow threaders. None of
the appellants has a state cosmetology license.

 The Department is the state agency charged with regulating cosmetology. Tex. Occ.
Code Ann. §§ 51.051, 1602.001-.002, 1603.001-.002 (West 2004 & Supp. 2011). The Commission
governs the Department and is statutorily authorized to appoint the Department's executive director,
oversee the director's administration, formulate policy, and adopt administrative rules. Id.
§§ 51.051, 51.101, 51.201, 1603.101 (West 2004 & Supp. 2011). The Department's executive
director is responsible for administering the Department's programs. Id. § 51.103(a)(2) (West 2004).

 The Department initiated administrative actions against appellants Momin, Rokhti,
and Yogi, seeking to impose penalties against them for practicing eyebrow threading without a
license. (3) See id. §§ 51.301-.302 (West 2004) (Executive Director or Commission authorized to
impose administrative penalty per alleged violation per day), § 1602.251(a) (West Supp. 2011) ("A
person may not perform or attempt to perform a practice of cosmetology unless the person holds a
license or certificate to perform that practice."). The Department also investigated complaints
against an eyebrow threading business owned by Satani concerning the employment of unlicensed
eyebrow threaders, but no notice of alleged violation has been issued against the business. (4) See
id. § 1602.403 (West Supp. 2011) (person holding beauty shop or speciality license may not employ
unlicensed operator or specialist).

 Appellants thereafter brought this suit in December 2009, seeking declaratory and
injunctive relief pursuant to the Uniform Declaratory Judgements Act (UDJA). See Tex. Civ. Prac.
& Rem. Code Ann. §§ 37.001-.011 (West 2008). In their pleadings, appellants alleged that
"[w]ithout any changes in state law or administrative rules, Defendants have abruptly taken the
position that threading is the practice of cosmetology, requiring government-issued licenses for both
threading business owners and their employees."

 Appellants, however, did not seek a declaration that the practice of eyebrow threading
was outside the statutory definition of cosmetology. See Tex. Occ. Code Ann. § 1602.002 (West
Supp. 2011) (definition of cosmetology). (5) Rather, they contended that the challenged cosmetology
statutes and rules were unreasonable as applied to eyebrow threading and violated their constitutional
right "to earn an honest living in the occupation of one's choice free from unreasonable
governmental interference," that the state defendants do not have an "important, legitimate, or
rational reason for applying Texas' cosmetology laws and rules to the commercial practice of
eyebrow threading," that "[t]he state's police power does not extend to the regulation of harmless
commercial practices such as eyebrow threading," and that the state defendants are "presently and
unconstitutionally requiring or attempting to require Plaintiffs to obtain licenses that are not
reasonably related to their chosen occupation."

 As to their pleaded claims for relief, appellants sought declaratory judgment that the
state defendants "violate the privileges and immunities guarantee of the Texas Constitution by
unreasonably interfering with Plaintiffs' right to pursue eyebrow threading" and "violate the due
process guarantee of the Texas Constitution by unreasonably interfering with Plaintiffs' right
to pursue eyebrow threading." They also sought "a permanent injunction barring Defendants
from enforcing Texas' cosmetology laws--specifically Sections 1601.002, 1601.251,
1602.002, 1602.251, and 1602.403 of the Texas Occupations Code and Title 16, Sections 83.1
through 83.120 of the Texas Administrative Code--against Plaintiffs based on the commercial
practice of eyebrow threading." (6)

 Appellants filed a motion for summary judgment in October 2010. Appellants sought
summary judgment on the ground that the state defendants' application of cosmetology laws and
rules to the commercial practice of eyebrow threading was unconstitutional "because it places
senseless burdens on eyebrow threaders and threading businesses without any actual benefit to public
health and safety." They urged that the state defendants could not "constitutionally regulate the
commercial practice of eyebrow threading as conventional cosmetology unless they can establish a
real and substantial relationship between their regulations and the public's health and safety" and that
the state defendants could not meet this standard. Their arguments included that "state cosmetology
licensing [was] not necessary for safe eyebrow threading," that the state defendants "credentialing
program [was] doing nothing to promote public health or competent threading in Texas," and that
the statutes and rules were "grossly out of proportion to any legitimate health and safety objections
the government may have."

 Appellants attached evidence to support their motion, including affidavits of
appellants, discovery responses by the state defendants, deposition excerpts, and an affidavit by their
expert with attachments. Appellants presented evidence to support their positions that eyebrow
threading is safe, that the beauty schools do not teach eyebrow threading, and that eyebrow threading
is not tested as a condition of licensure. The evidence included costs to attend a state-licensed beauty
school and to take the examinations and the required number of hours of instruction and curriculum. 
See Tex. Occ. Code Ann. §§ 1602.251, .254, .257 (West Supp. 2011) (license and certificate
requirements for individuals); 16 Tex. Admin. Code §§ 83.20-.21 (individual license and
examination requirements).

 Around the same time, the state defendants filed a plea to the jurisdiction and motion
for summary judgment, as well as a motion to strike appellants' expert testimony. In their plea and
motion for summary judgment, the state defendants challenged appellants' standing and contended 
that appellants' claims were barred by sovereign immunity. As to the merits of appellants' claims,
the state defendants argued, among other grounds, that the uncontested facts showed that appellants
failed as a matter of law to articulate a privileges and immunities violation different from their
substantive due process claim or to show that Texas cosmetology laws and implementing rules
deprived appellants of any substantive due process right or interest protected by article I, section 19
of the Texas Constitution. See Tex. Const. art. I, § 19. The State defendants attached evidence to
support their plea and motion, including discovery responses by appellants and affidavits and
deposition excerpts with attachments.

 After a hearing, the district court denied the state defendants' plea to the jurisdiction
and motion to strike expert testimony but granted their motion for summary judgment and denied
appellants' motion for summary judgment. The district court thereafter signed a final judgment. 
These cross appeals followed.


ANALYSIS


State Defendants' Plea to the Jurisdiction

 We begin with the threshold jurisdictional issues raised by the state defendants on
cross appeal. In their first three issues, the state defendants challenge the district court's denial of
their plea to the jurisdiction. (7) They contend that appellants' UDJA suit is barred by sovereign
immunity, urging that appellants failed to allege a viable ultra vires claim against the state officials
and that there is no waiver of immunity to allow such claims directly against state entities. They also
raise standing and ripeness challenges to appellants' claims.


 A) Standard of Review


 We review a plea questioning the trial court's subject matter jurisdiction de novo. 
See Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). We focus first
on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate
that subject matter jurisdiction exists. Id. at 226. We construe the pleadings liberally in favor of the
plaintiff. Id. If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial
court may consider evidence and must do so when necessary to resolve the jurisdictional issues
raised. Id. at 227; Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000). The court's
"ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally
construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims
within the trial court's jurisdiction." Brantley v. Texas Youth Comm'n, No. 03-10-00019-CV,
2011 Tex. App. LEXIS 8220, at *34-38 (Tex. App.--Austin Oct. 12, 2011, no pet.) (mem. op.)
(citing Miranda, 133 S.W.3d at 226; Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on
Envtl. Quality, 307 S.W.3d 505, 513, 516 n.8 (Tex. App.--Austin 2010, no pet.)).


 B) Sovereign Immunity


 The state defendants challenge the district court's jurisdiction to consider appellants'
UDJA claims based upon sovereign immunity. "Sovereign immunity from suit defeats a trial court's
subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." Miranda,
133 S.W.3d at 225-26 (citing Texas Dep't of Transp. v. Jones, 8 S.W.3d 636, 637 (Tex. 1999)). To
proceed in a suit against state entities and officials, a plaintiff must establish a waiver of immunity,
see Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003); Jones, 8 S.W.3d at 638,
or that sovereign immunity is inapplicable. See City of El Paso v. Heinrich, 284 S.W.3d 366,
372-73 (Tex. 2009) (sovereign immunity does not prohibit "suits to require state officials to comply
with statutory or constitutional provisions"); City of Beaumont v. Bouillion, 896 S.W.2d 143,
149 (Tex. 1995) ("[S]uits for equitable remedies for violation of constitutional rights are
not prohibited.").


 (i) Claims against the Department and the Commission

 

 As part of their first issue, the state defendants urge that appellants' claims are in
substance ultra vires claims and, therefore, that there is no waiver of immunity to allow such claims
directly against the Department and the Commission. See Texas Dep't of Ins. v. Reconveyance,
306 S.W.3d 256, 258-59 (Tex. 2010) (deeming allegations and requested declaration, in substance,
ultra vires claims and dismissing claims against department); Heinrich, 284 S.W.3d at 372-73
(explaining that suits seeking to restrain official conduct that is ultra vires of an agency's statutory
or constitutional powers "cannot be brought against the state, which retains immunity, but must be
brought against the state actors in their official capacity" because "'acts of officials which are not
lawfully authorized are not acts of the State'" (citation omitted)). Appellants dispute that their
claims are ultra vires claims and argue that they are properly asserted against the Department and the
Commission, as well as against the Executive Director and the Commission members.

 Sovereign immunity generally does not bar suit against a governmental entity that
challenges the constitutionality of a statute and seeks injunctive relief. See Texas Educ. Agency
v. Leeper, 893 S.W.2d 432, 446 (Tex. 1994)) (holding that sovereign immunity did not bar UDJA
suit against state agency that challenged statute itself and sought injunctive relief); see also Tex.
Const. art. I, § 29 ("[W]e declare that everything in this 'Bill of Rights' is excepted out of the general
powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to
the following provisions, shall be void."); City of Elsa v. M.A.L., 226 S.W.3d 390, 392 (Tex. 2007)
(per curiam) ("'Suits for injunctive relief' may be maintained against governmental entities
to remedy violations of the Texas Constitution." (citation omitted)); City of Arlington v. Randall,
301 S.W.3d 896, 906 (Tex. App.--Fort Worth 2009, pet. denied) ("Although no implied private
right of action exists for money damages against governmental entities for violations of the Texas
Constitution, a suit seeking an equitable remedy for violations of constitutional rights may be
maintained against governmental entities." (citing Bouillion, 896 S.W.2d at 147)); Texas Dep't of
State Health Servs. v. Holmes, 294 S.W.3d 328, 336 (Tex. App.--Austin 2009, pet. denied)
("Sovereign immunity does not shield a governmental entity from a suit for equitable relief for a
violation of constitutional rights." (citing Bouillion, 896 S.W.2d at 149)). (8)

 Further, although the UDJA does not establish subject matter jurisdiction, see Texas
Dept. of Transp. v. Sefzik, 355 S.W.3d 618, 621-22 (Tex. 2011) (stating that "the UDJA does not
enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already
within a court's jurisdiction'" (citation omitted)), the UDJA "expressly provides that persons may
challenge . . . statutes, and that governmental entities must be joined or notified." Texas Lottery
Comm'n v. First State Bank, 325 S.W.3d 628, 634 (Tex. 2010) (quoting Leeper, 893 S.W.2d at 446);
see also Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004(a), .006. (9)

 Among appellants' claims in their pleadings, they challenge the constitutionality of
specific cosmetology statutes themselves as applied to the practice of eyebrow threading. See
Leeper, 893 S.W.2d at 446; Texas Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 518 n.16
(Tex. 1995) ("as applied" challenge to statute is challenge "under which the plaintiff argues that a
statute, even though generally constitutional, operates unconstitutionally as to him or her
because of the plaintiff's particular circumstances"). This claim does not require an interpretation
of the challenged statutes that eyebrow threading falls outside the scope of those statutes. 
See Texas Dept. of Licensing and Regulation v. Roosters MGC, LLC, No. 03-09-00253-CV,
2010 Tex. App. LEXIS 4392, at *8-11 (Tex. App.--Austin June 10, 2010, no pet.) (mem. op.) (state
agency immune from claims seeking declarations regarding proper interpretation of statute and that
services at issue outside scope of statute). Appellants also seek a permanent injunction against the
state defendants barring them from enforcing the challenged statutes against appellants for the
commercial practice of eyebrow threading. Given their claim challenging specific statutes
themselves and their requested injunctive relief, we conclude that the district court did not err in
denying the state defendants' plea to the jurisdiction as to the state entities. See Texas Lottery
Comm'n, 325 S.W.3d at 635; City of Elsa, 226 S.W.3d at 392.


 (ii) Claims against the Executive Director and the Members of
the Commission


 The state defendants also urge in their first issue that appellants failed to allege a
"viable" ultra vires claim against the state officials. See Andrade v. NAACP of Austin, 345 S.W.3d 1,
11 (Tex. 2011) (citation omitted) (state actors retain immunity from claims unless the plaintiff has
"pleaded a viable claim"). The state defendants characterize the substance of appellants' claims as
ultra vires claims but assert that appellants "failed to identify any ultra vires acts." (10) See
Reconveyance, 306 S.W.3d at 258-59. Their argument focuses on the merits of appellants'
constitutional claims: whether the claims, assuming that they are ultra vires, are "viable." See
Andrade, 345 S.W.3d at 11.

 Although the district court ultimately denied the state defendants' plea to the
jurisdiction, the court considered the evidence presented by both sides and determined the merits of
competing motions for summary judgment at the same time it considered the state defendants' plea. 
In this context, we cannot conclude that the court erred by denying the state defendants' plea to the
jurisdiction and determining the merits of appellants' constitutional claims against the state officials
by summary judgment. See Roosters MGC, LLC, 2010 Tex. App. LEXIS 4392, at *7-8 (citing
County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002)) ("In deciding a plea to the
jurisdiction, a court may not weigh the claims' merit beyond the extent necessary to determine
jurisdiction, but must consider only the plaintiffs' pleadings and the evidence pertinent to the
jurisdictional inquiry."); see also Holmes, 294 S.W.3d at 335 (holding that trial court did not err in
denying plea to the jurisdiction and deferring its determination of alleged constitutional violation
"until the case could be more fully developed"). We overrule the state defendants' first issue on
cross appeal.


 C) Standing and Ripeness


 In their second and third issues, the state defendants contend that the district court
erred in denying the state defendants' plea to the jurisdiction based upon lack of standing and
ripeness. See Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 850 (Tex. 2000) (standing and
ripeness component parts of subject matter jurisdiction). They contend that Patel and Satani lack
standing because they have no injury traceable to the regulation of eyebrow threading that would be
redressable by a favorable ruling and that the claims of Patel, Satani, and Chamadia are not ripe. 
They also contend that the claims of Momin, Yogi, and Rokhti are subject to the redundant
remedies doctrine.

 (i) Standing


 "[S]tanding focuses on the issue of who may bring an action." Id. at 851 (citing
Barshop v. Medina Cnty. Underground Water Conservation Dist., 925 S.W.2d 618, 626-27 (Tex.
1996)) (emphasis in original). "The general test for standing in Texas requires that there (a) shall
be a real controversy between the parties, which (b) will be actually determined by the judicial
declaration sought." Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)
(citation omitted). Because appellants seek only declaratory and injunctive relief and they seek the
same relief, "only one plaintiff with standing is required." See Andrade, 345 S.W.3d at 6 (citing
Barshop, 925 S.W.2d at 627).

 On appeal, the state defendants do not challenge appellant Chamadia's standing to
assert appellants' claims for injunctive and declaratory relief, and they did not present evidence to
negate her pleaded facts supporting standing. Further, the determination of the declarations sought
here resolves appellants' constitutional challenge to the regulation of eyebrow threading. See Texas
Assoc. of Bus., 852 S.W.2d at 446. Based upon the pleadings and un-negated facts taken as true, we
conclude that Chamadia has established standing. Id.; see also Webb v. Voga, 316 S.W.3d 809, 812
(Tex. App.--Dallas 2010, no pet.) ("Standing is generally a question of law determined from
the pleadings."). Because we conclude that Chamadia has standing, we need not review the
standing of Patel and Satani to assert the same claims for declaratory and injunctive relief. See
Andrade, 345 S.W.3d at 6.


 (ii) Ripeness


 Similar to standing, ripeness "emphasizes the need for a concrete injury for a
justiciable claim to be presented" but it "focuses on when that action may be brought." Gibson,
22 S.W.3d at 851 (citation omitted) (emphasis in original). In assessing ripeness, "a court is required
'to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of
withholding court consideration.'" Perry v. Del Rio, 66 S.W.3d 239, 250 (Tex. 2001) (quoting
Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)). "Hardship is shown when a statute 'requires
an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties
attached to noncompliance.'" Mitz v. Texas State Bd. of Veterinary Med. Exam'rs, 278 S.W.3d 17,
26 (Tex. App.--Austin 2008, pet. dism'd) (quoting Abbott Labs, 387 U.S. at 153).

 The state defendants contend that the claims of Patel, Satani, and Chamadia are not
ripe because there have been no enforcement actions against them and they have suffered no injury
from the challenged regulations. The pleadings and un-negated facts, however, taken as true show
that Chamadia, Patel, and Satani are subject to a continuing threat of civil and criminal liability for
the practice of eyebrow threading without a license, as well as administrative penalties and sanctions. 
See Tex. Occ. Code Ann. §§ 51.301- .302 (administrative penalty) (West 2004), 51.352-.353 (West
Supp. 2011) (civil penalty and administrative sanctions), 1602.554 (West 2004) (unlicensed practice
of cosmetology criminal misdemeanor); Perry, 66 S.W.3d at 250; Mitz, 278 S.W.3d at 25-26
(holding constitutional claim ripe for review, considering "continuing threat of civil and
criminal liability against the practitioners and the direct effect the Act had on their ongoing
business enterprise").

 As with Chamadia's pleadings concerning her interest in the controversy, Patel and
Satani pleaded, and the un-negated facts taken as true show, that they both have interests in eyebrow
threading businesses and that the departments' actions threaten them with "punishing administrative
fines, civil penalties, and criminal penalties." Further, appellants challenge the constitutionality of
statutes, a challenge that is "is unquestionably an issue fit for judicial review." Mitz, 278 S.W.3d
at 23 (citation omitted). Given appellants' pleadings and the un-negated facts taken as true,
Chamadia, Patel, and Satani have shown hardship without judicial consideration and that their issues
are fit for judicial review. See Perry, 66 S.W.3d at 250; Mitz, 278 S.W.3d at 26. We conclude then
that their claims are ripe.


 (iii) Redundant Remedies


 Under the redundant remedies doctrine, when a statute provides an avenue for
attacking a final agency order, a UDJA action generally will not lie to provide a redundant remedy. 
See Strayhorn v. Raytheon E-Sys., Inc., 101 S.W.3d 558, 572 (Tex. App.--Austin 2003, pet. denied);
Kuntz v. Khan, No. 03-10-00160-CV, 2011 Tex. App. LEXIS 446, at *11 (Tex. App.--Austin
Jan. 21, 2011, no pet.) (mem. op.). The state defendants contend that the claims of Momin, Yogi,
and Rokhti are barred by this doctrine because all of the substantive relief that appellants seek
through their UDJA suit could be brought through the administrative process. See Tex. Gov't Code
Ann. § 2001.174(2)(A)-(B) (West 2008).

 Although administrative actions subject to judicial review are pending against
Momin, Yogi, and Rokhti, there is no administrative action pending against Chamadia, and we have
concluded that she has standing to assert appellants' claims for declaratory and injunctive relief. See
Andrade, 345 S.W.3d at 6. As we concluded previously as to the standing of Patel and Satani, we
need not review the standing of Momin, Yogi, and Rokhti to assert the same claims asserted by
Chamadia for declaratory and injunctive relief. See id. Further, Momin, Yogi, and Rokhti remain
subject to civil and criminal liability, in addition to administrative penalties and sanctions. See, e.g.,
Mitz, 278 S.W.3d at 26 (case ripe for judicial review although administrative proceedings pending
because "continuing threat of civil and criminal liability" established hardship without judicial
consideration). Given their continuing exposure to civil and criminal liability and Chamadia's
standing to assert appellants' claims, we conclude that the redundant remedies doctrine does not bar
the other individual appellants' claims. See id.

 Having found standing and that the challenged claims are ripe for judicial review, we
overrule the state defendants' second and third issues on cross appeal and turn to appellants' issues.


Appellants' Issues on Appeal


 Appellants raise four issues challenging the district court's summary judgment
rulings. They contend in their first two issues that (i) the district court erred because it should have
applied the "real and substantial" test that governs judicial review of state economic regulations and
not the federal "rational basis" test, (ii) the record does not show a substantial relationship between
the government's eyebrow threading regulations and the public health and safety, and (iii) the
regulations are unduly burdensome. Appellants contend in their third issue that, even if the federal
"rational basis" test controls, the record does not show any rational relationship between the eyebrow
threading regulations and legitimate public safety objectives. In their final issue, they contend that
the district court abused its discretion by admitting portions of an affidavit.


 A) Standards of Review


 We review a trial court's decision to grant or deny summary judgment de novo. 
Texas Mun. Power Agency v. Public Util. Comm'n of Tex., 253 S.W.3d 184, 192 (Tex. 2007);
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins.
Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a traditional motion for summary
judgment, the movant must show that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Southwestern Elec. Power Co.
v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). We take as true all evidence favorable to the nonmovant,
and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. 
Dorsett, 164 S.W.3d at 661. When the parties file competing motions for summary judgment, and
one is granted and one is denied, we review the record, consider all questions presented, and render
the decision the trial court should have rendered. Id. When the trial court does not specify the
grounds for its summary judgment, as is the case here, the appellate court must affirm the summary
judgment if any of the theories presented to the trial court and preserved for appellate review are
meritorious. Knott, 128 S.W.3d at 216.


 B) Appellants' Constitutional Challenge to Cosmetology Statutes and
Rules as applied to Eyebrow Threading


 In their first issue, appellants contend that the standard for reviewing their
constitutional challenges brought under article I, section 19 of the Texas Constitution is the "real and
substantial" test for challenges to economic regulations. (11) In the context of determining whether a
statute is a proper exercise of police power, this Court has stated the test as whether "the statute in
question bears a real and substantial relation to the public health, safety, morals, or general welfare
of the public." Satterfield v. Crown Cork & Seal Co., 268 S.W.3d 190, 216 (Tex. App.--Austin
2008, no pet.) (emphasis in original). A statute is a proper exercise of police power if it is
"appropriate and reasonably necessary to accomplish a purpose within the scope of the police power"
and it is "reasonable and not arbitrary or unjust in the manner it seeks to accomplish the goal of the
statute or so unduly harsh that it is out of proportion to the end sought to be accomplished." Id. at
215 (citation omitted).

 The state defendants counter that the proper standard is federal "rational basis"
review, the standard that applies to federal due process challenges. See Garcia, 893 S.W.2d
at 525 (rational basis test discussed); see also City of San Antonio v. TPLP Office Park Prop.,
218 S.W.3d 60, 65-66 (Tex. 2007) (applying "rational basis" review to substantive due process
challenge to city action and ordinance); University of Tex. Med. Sch. v. Than, 901 S.W.2d 926,
929 (Tex. 1995) (explaining that "due course" provision in Texas Constitution lacks
"meaningful distinction" from federal "due process"); Liberty Mut. Ins. Co. v. Texas Dep't of Ins.,
187 S.W.3d 808, 827 (Tex. App.--Austin 2006, pet. denied) (applying federal rational basis review
to substantive due process challenges); Lens Express, Inc. v. Ewald, 907 S.W.2d 64, 68-69 (Tex.
App.--Austin 1995, no writ) (same). "Under federal due process, a law that does not affect
fundamental rights or interests--such as the economic legislation at issue here--is valid if it merely
bears a rational relationship to a legitimate state interest." See Garcia, 893 S.W.2d at525 (citing
Williamson v. Lee Optical Co., 348 U.S. 483, 491 (1955)). (12)

 In Garcia, the Texas Supreme Court "recognized that 'Texas courts have not been
consistent in articulating the standard of review under the due course clause.'" Id. (citation omitted). 
The court noted that Texas courts "have sometimes indicated that section 19 provides an identical
guarantee to its federal due process counterpart" and, "[o]n other occasions, . . . our Court has
attempted to articulate our own independent due course standard . . . which some courts have
characterized as more rigorous than the federal standard." Id.; see Trinity River Auth. v. URS
Consultants, Inc., 889 S.W.2d 259, 263 & n.5 (Tex. 1994) (noting that Texas courts not consistent
in articulating standard of review under due course clause). Because appellants' issues raise
substantive due process as well as arguing that the eyebrow threading regulations are not a proper
exercise of the state's police power, we consider their arguments under both standards.


 (i) Appellants' Arguments


 Appellants contend that the cosmetology statutes and rules as applied to eyebrow
threading do not pass the real and substantial test because they have no real or substantial connection
to stated objectives such as sanitation and health and safety. They argue that the "constitutionally
required real and substantial connection is lacking because the government has no evidence that
eyebrow threading is dangerous and, even if it did, there is no meaningful connection between the
practice of eyebrow threading and the [Department]'s conventional cosmetology regulations." They
also argue that the effect of the regulation is unduly harsh in proportion to the stated objections.

 Appellants alternatively contend that even if the district court correctly applied the
federal "rational basis" test, that it misapplied the test because "there is an irrational disconnect
between legitimate concerns for the public's safety and requiring eyebrow threaders to undergo
several hundred hours of irrelevant training simply to guarantee perhaps a few dozen hours of
sanitation training." They argue that: (i) the regulations "may, in fact, undermine safety by giving
consumers a false sense of security in the ability of state-licensed cosmetologists to perform
threading," and (ii) the state's cosmetology training program has nothing to do with eyebrow
threading and, therefore, that "there is no sense in requiring them to endure it."

 Appellants further argue that we must consider and weigh the evidence and that the
evidence supports their position that the statutes and rules should be struck down. They point to
evidence that they contend supports findings that: (i) eyebrow threading does not require
conventional cosmetology training, (ii) it is "safe and requires, at most, minimal sanitation training,"
(iii) Texas does not require beauty schools to teach eyebrow threading, (iv) a limited number
of schools voluntarily teach threading, and (v) Texas does not test threading as a condition
of licensure. (13)

 The requirements for obtaining and then maintaining a cosmetology license include
completing 1500 hours--or 750 hours for a facialist--in a licensed beauty school, passing written
and practical examinations, paying biannual fees, and taking continuing education courses. See
Tex. Occ. Code Ann. §§ 1602.254-.258 (eligibility for licenses), 1603.252-.257 (examination
requirements), 1602.351 (minimum curriculum for schools), 1602.451 (West Supp. 2011)
(duties of holder of beauty school license); 16 Tex. Admin. Code §§ 83.20(a) (license requirements),
83.25(e) (continuing education), 83.26(a)-(b) (renewal), 83.31(a) (term), 83.80(a)-(b) (fees),
83.120 (curriculum).

 Appellants urge that the general sanitation training taught in beauty schools does not
justify requiring eyebrow threaders to undergo 750 or 1500 hours of instruction and two
examinations. The facial curriculum requires 40 hours out of the 750 hours required for "sanitation,
safety, and first aid." See 16 Tex. Admin. Code § 83.120. The facial curriculum additionally
includes: 225 hours for "facial treatment, cleansing, masking, therapy," 90 hours for "anatomy and
physiology," 75 hours for "electricity, machines, and related equipment," 75 hours for "Makeup,"
50 hours for "orientation, rules and laws," 50 hours for "Chemistry," 50 hours for "care of client,"
35 hours for "management," 25 hours for "superfluous hair removal," 15 hours for "aroma therapy,"
10 hours for "Nutrition," and 10 hours for "color psychology." See id. Appellants urge that the
training that the Department has imposed "comes with at least 710 hours of unnecessary instruction"
and that the "threading regulations place a disproportionate burden on Appellants as compared to
the public benefits (if any) of licensing eyebrow threaders as conventional cosmetologists."


 (ii) The State Defendants' Contrary Arguments


 On the contrary, the state defendants contend that rational basis review applies to
appellants' economic liberty claims brought under the Texas Constitution and that, in any event, the
challenged regulations survive under either rational basis or real and substantial review. The state
defendants' position is that the practice of eyebrow threading requires, at a minimum, a license for
a facialist, and that the application of the licensing requirements for a facialist to eyebrow threading,
as well as the other challenged cosmetology regulations, bears a rational relationship to the legitimate
state purpose of protecting public health and safety. See Tex. Admin. Code §§ 83.10(9) (definition
of facialist), 82.120(b) (facial curriculum). (14) They also contend that there is a real and substantial
connection between the eyebrow threading regulations and the legitimate concern for public health,
safety, and sanitation. They argue that Texas regulates eyebrow threading because cosmetology
procedures and techniques--including eyebrow threading--performed on the public implicate the
transmission of communicable diseases unless safe and sanitary practices are followed and that a
primary basis for regulating cosmetology services--including eyebrow threading--is due to the risk
of contamination and spread of disease inherent in providing such services to the public.

 The state defendants focus on sections of the cosmetology statutes and rules that
specifically address public health, safety, and sanitation concerns. See, e.g., Tex. Occ. Code Ann.
§§ 1603.102 (West Supp. 2011) (Commission required to "establish sanitation rules to prevent the
spread of an infectious or contagious disease"), 1603.352 (West Supp. 2011) (imposing sterilization
requirements for certain cosmetology services), 1602.406 (West 2004) (practice of cosmetology
forbidden by any licensed person who knows they are suffering from infectious or contagious
disease), 1603.455 (West Supp. 2011) (Department authorized to issue emergency orders "to protect
the public health and safety"); see generally 16 Tex. Admin. Code §§ 83.100-.111; see id. §§ 83.100
(health and safety definitions), 83.102 (general health and safety standards), 83.104 (health and
safety standards for facial services), 83.111 (health and safety standards related to blood and bodily
fluids).

 The state defendants also dispute appellants' characterization of the testing and
teaching of eyebrow threading by Texas beauty schools and in the textbooks. They presented
conflicting evidence concerning the cost and extent that beauty schools teach and test threading and
health, safety, and sanitation and the topics covered by the licensing examinations. The evidence
included excerpts from textbooks, actual test questions from the licensing examinations, candidate
information bulletins that advise candidates of the subjects covered on the examinations, and an
affidavit by Marinela LaFleur, a program specialist in the education and examination division from
the Department. The excerpts from the textbooks cover, among other topics, hair removal including
threading, disorders and diseases, sanitation, bacteria, viruses, infection control, and first aid. The
subject areas covered by the test questions and the candidate information bulletin include sanitation
and safety concerns, as well as hair removal. (15)

 In her affidavit, LaFleur testified concerning the facial curriculum and the topics
covered on the licensing examinations in relevant part:


 The facial curriculum, which requires 25 hours of instruction in superfluous hair
removal, does not specify the types of hair removal that beauty schools must teach. 
Schools may elect to teach waxing, threading or other hair removal techniques in
response to student demand. . . .

 

 With regard to the current facialist exam in particular, 24 percent of the written exam
(22 questions out of 90) directly addresses sanitation, disinfection, and safety. In
addition, these matters are also addressed as part of the client consultation and
analysis component (e.g. human physiology, anatomy, and disorders), which
constitutes 12 percent (11 questions) of the exam. Hair removal, including eyebrow
threading as a form of tweezing, comprises another 11 percent (10 questions) of the
exam. A candidate's eyebrow threading technique and hands-on compliance with the
related sanitation requirements are tested during all three phases of the practical
examination--pre-service, during service, and post-service. During each of these
phases, the applicant is assigned points for successfully performing eyebrow
threading technique and/or adhering to all of the safety criteria that are part of each
phase of a proper eyebrow tweezing.



She also listed textbooks that are currently used in beauty schools "which represent accepted
Cosmetology standards."

 The state defendants also rely upon appellants' expert to support their position that
the challenged regulations meet either test. In the report that was attached to her affidavit,
appellants' expert listed diseases that can be spread through the threading process and articles
reflecting medical risks of threading and the need for sanitation to minimize the risks. She stated
in part:


 The sanitation risk of any form of hair removal technique, including eyebrow
threading, could result in viral and superficial bacterial infections. . . . 


 The complications mentioned can occur with waxing or tweezing since the listed
complications are due to the "trauma" of the procedure rather than just threading. It
is the act of having the skin abraded that causes the complication of redness,
swelling, itching, inflammation of the hair follicles, discoloration, and the superficial
bacterial and viral infections. Thus, all forms of avulsive (pulling) like hair removal
can have these complications. . . . 



Her report also listed specific forms of bacteria and viruses that are contagious and that can be spread
during the threading process.


 (iii) Analysis of Appellants' Constitutional Challenge


 Because the district court granted summary judgment in favor of the state defendants,
the issue on appeal is whether the state defendants established that they were entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); Grant, 73 S.W.3d at 215. We, therefore, consider the
evidence in the light most favorable to appellants. We also presume, however, that the challenged
regulations are constitutional, and appellants, as the parties challenging the constitutionality of the
regulations, bear the burden to demonstrate that the regulations fail to satisfy constitutional
requirements. Satterfield, 268 S.W.3d at 201 (citing Enron Corp. v. Spring Indep. Sch. Dist.,
922 S.W.2d 931, 934 (Tex. 1996) and Vinson v. Burgess, 773 S.W.2d 263, 266 (Tex. 1989)).

 Appellants presented evidence that eyebrow threading is safe but whether it generally
is safe is not determinative here. Appellants do not dispute that a primary purpose of the
cosmetology regulations is to protect public health, safety, and sanitation. They also do not dispute
that eyebrow threading is subject to regulation as a cosmetology service. (16) Because the challenged
regulations address an occupation and are related to public health and safety, they are squarely within
the scope of the state's police power. See Satterfield, 268 S.W.3d at 217 (regulation of occupations
and professions and regulations concerning public health and safety within the scope and proper
exercise of police power); see also Texas State Bd. of Barber Exam'rs v. Beaumont Barber College,
Inc., 454 S.W.2d 729, 731 (Tex. 1970) (regulation of barber trade necessary to public health and
proper exercise of police power).

 The Texas Supreme Court has explained the courts' role when reviewing statutes that
are within the scope of the police power:


 A large discretion is necessarily vested in the Legislature to determine not only what
the interests of the public require, but what measures are necessary for the protection
of such interests. If there is room for a fair difference of opinion as to the necessity
and reasonableness of a legislative enactment on a subject which lies within the
domain of the police power, the courts will not hold it void.



State v. Richards, 301 S.W.2d 597, 602 (Tex. 1957). In Richards, the supreme court found that the
innocent-owner provision of a civil asset forfeiture statute as applied to the property rights of the
innocent owner was within the scope of the state's police power and upheld it against a state
substantive due process challenge. See id. at 602-03; cf. Satterfield, 268 S.W.3d at 220 (holding
that statute that limited asbestos-related liabilities of certain successor corporations not within
police power).

 Similarly, in the context of a challenge to state regulation of visual care and related
licensing requirements, the United States Supreme Court found that the challenged statutes that
subjected opticians to the regulatory system at issue did not violate the constitution. Williamson,
348 U.S. at 491 ("We cannot say that the regulation has no rational relation to that objective
[professional treatment of human eye] and therefore is beyond constitutional bounds."). In reaching
its holding, the court observed:


 The [challenged state] law may exact a needless, wasteful requirement in many cases. 
But it is for the legislature, not the courts, to balance the advantages and
disadvantages of the new requirement. . . . [T]he law need not be in every respect
logically consistent with its aims to be constitutional. It is enough that there is an
evil at hand for correction, and that it might be thought that the particular legislative
measure was a rational way to correct it.


 The day is gone when this Court uses the Due Process Clause of the Fourteenth
Amendment to strike down state laws, regulatory of business and industrial
conditions, because they may be unwise, improvident, or out of harmony with a
particular school of thought.



Id. at 487-88 (citation omitted); see also City of New Orleans v. Dukes, 427 U.S. 297, 303 (1974)
("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative
policy determinations."). (17)

 Applying these directives for reviewing regulations that are within the scope of the
police power here, we conclude that, under either the real and substantial test or rational basis
review, the state defendants established that they were entitled to summary judgment as a matter of
law. See Texas State Bd. of Barber Exam'rs, 454 S.W.2d at 732 (citation omitted) ("The necessity
or reasonableness of particular regulations imposed under the police power is a matter addressed to
the legislative department whose determination in the exercise of a sound discretion is conclusive
upon the courts. Legislative enactments will not be held unconstitutional and invalid unless it is
absolutely necessary to so hold."). Viewing the evidence in the light most favorable to appellants,
the evidence at most established that there is "room for a fair difference of opinion as to the necessity
and reasonableness" of the challenged regulations. See Richards, 301 S.W.2d at 602; see also FM
Prop. Operating Co. v. City of Austin, 93 F.3d 167, 175 (5th Cir. 1996) (where the question of
whether there is a rational relationship between policy and legitimate objective is "debatable," no
substantive due process violation).

 In Garcia, the supreme court found that under "any articulation," the statute at issue
was "sufficiently rational and reasonable to meet constitutional due course requirements." See
893 S.W.2d at 525; see also Trinity River Auth., 889 S.W.2d at 263 (noting standard of review under
due course clause not consistently articulated and holding that "under any cognizable test" statute
at issue "passes constitutional muster"). Similarly, on the record before us, we conclude that the
challenged regulations are "sufficiently rational and reasonable to meet constitutional due course
requirements." See id.

 (iv) Craigmiles and Cornwell

 As part of their third issue, appellants rely on two federal court decisions to
support their position that, even under the rational basis test, the regulatory licensing scheme as
applied to eyebrow threading violates their substantive due process rights. See Craigmiles v. Giles,
312 F.3d 220 (6th Cir. 2002); Cornwell v. Hamilton, 80 F. Supp. 2d 1101 (S.D. Cal. 1999). We find
both cases distinguishable.

 In Craigmiles, the plaintiffs challenged an amendment to a statute that precluded the
selling of caskets without a "funeral director" license from the state. 312 F.3d at 222. In that case,
the evidence showed that licensed funeral directors sold the caskets at prices substantially over total
costs. Id. at 224. Applying rational basis review, the Sixth Circuit held that the amendment violated
both the due process and equal protection clauses of the Fourteenth Amendment, "[f]inding no
rational relationship to any of the articulated purposes of the state" and that the amendment was
"nothing more than an attempt to prevent economic competition." Id. at 225, 228; see also U.S.
Const. amend. XIV, § 1. Given the "pretextual nature of the state's offered explanations," the court
invalidated the "naked attempt to raise a fortress protecting the monopoly rents that funeral directors
extract from consumers." 312 F.3d at 229. Here, in contrast with the challenged amendment in
Craigmiles, there was no evidence to support a finding that the purpose of the regulation of the
practices of cosmetology, including eyebrow threading, was economic protection or to prevent
economic competition.

 In Cornwell, the plaintiffs brought substantive due process and equal protection
claims challenging California cosmetology regulations as applied to African hair braiding. 
80 F. Supp. 2d at 1102-03. The plaintiffs' equal protection claim was "grounded on the reasoning
that 'sometimes the grossest discrimination can lie in treating things that are different as though they
were exactly alike.'" Id. (citation omitted). Plaintiffs also alleged that the "current cosmetology
regulatory regime has the intent and effect of establishing and maintaining a cartel for cosmetology
services in California." Id. at 1113, 1117-18. Facing motions for summary judgment and applying
rational basis review, the California district court granted summary judgment for one of the plaintiffs
and denied it as to the other plaintiffs. The court concluded as to the successful plaintiff, who only
"locks" hair, that "her activities were of such a distinguishable nature" that she could not be
reasonably classified as "a cosmetologist as it is defined and regulated presently" and that, even if
she were defined as a cosmetologist, "the licensing regime would be irrational as applied to her
because of her limited range of activities." Id. at 1107-08. The court noted that the successful
plaintiff's task was limited to the "physical manipulation of hair without the use of hazardous
chemicals." Id. at 1118.

 The factors considered by the court to reach its finding that the regulations were not
rational as applied to the successful plaintiff included the mandated curriculum of 1600 hours, the
exposure of hair braiders to hazardous chemicals that they do not use in their trade, and the lack of
hair braiding teaching in the mandated curriculum. Although appellants make analogous arguments
here concerning the curriculum and licensing requirements, they did not seek a declaration that
eyebrow threading fell outside the definition of cosmetology, they did not bring an equal protection
claim, and they did not allege monopoly or other improper reasons behind the challenged regulations.
We further cannot conclude that hair braiding and eyebrow threading fall within the same type of
cosmetology services. See Tex. Occ. Code Ann. § 1602.258 (West Supp. 2011) (requisites for
speciality certificate eligibility determined by Department); 16 Tex. Admin. Code §§ 83.20(b)
(requirements for hair braiding speciality certificate), 83.120(b) (hair braiding curriculum different
from other cosmetology services).


 (v) Conclusion


 Because we conclude that the state defendants established as a matter of law that the
challenged cosmetology statutes and rules as applied to the practice of eyebrow threading do not
violate appellants' economic liberties under article I, section 19 of the Texas Constitution, we
conclude that the district court did not err in granting summary judgment in favor of the state
defendants. We overrule appellants' first, second, and third issues.



 C) Challenge to Admission of Portion of LaFleur's Affidavit


 In their final issue, appellants contend that the district court abused its discretion by
admitting portions of the affidavit of Marinela LaFleur concerning the number of hours of training
taught at licensed beauty schools devoted to general sanitation. See In re J.P.B., 180 S.W.3d 570,
575 (Tex. 2005) (per curiam) (standard of review of a trial court's decision to admit or exclude
evidence is abuse of discretion). Appellants objected to this portion of her testimony as conclusory. 
See, e.g., HIS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 803 (Tex.
2004) (conclusory statements in expert affidavit "insufficient to create a question of fact to defeat
summary judgment").

 A trial court abuses its discretion if it acts arbitrarily or unreasonably or without
reference to any guiding rules and principles. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex.
2002) (per curiam) (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985)). Additionally, to be entitled to reversal due to the erroneous admission of evidence, an
appellant must show that the error probably resulted in an improper judgment. Tex. R. App. P. 44.1;
State v. Central Expressway Sign Assocs., 302 S.W.3d 866, 870 (Tex. 2009). In conducting a harm
analysis, we review the entire record and require the complaining party to demonstrate that the
judgment turns on the particular evidence admitted. Bay Area Healthcare Group, Ltd. v. McShane,
239 S.W.3d 231, 234 (Tex. 2007); In re C.R., 263 S.W.3d 368, 370 (Tex. App.--Dallas 2008,
no pet.).

 In her affidavit, LaFleur testified that she was employed by the Department as a
program specialist in the education and examination division, that she had been in that position for
four years, that she was "familiar with and [had] knowledge of the curriculum for the cosmetology
operator and facialist license examination and the Candidate Information Bulletins (CIBs) that TDLR
publishes for the benefit of licensure candidates," and that she was "a licensed cosmetology operator
and a licensed cosmetology instructor."

 Appellants objected to the following paragraph in LaFleur's affidavit on the ground
that it was improper conclusory testimony that 430 hours are devoted to general sanitation training:


 The curriculum required to be taught in licensed beauty schools is listed in 16 TAC
§ 83.120(a) (operator curriculum - 1500 hours) and § 83.120(b) (facial curriculum
-750 hours). The curriculum covers extensive sanitation requirements found under
the following topics and hours: facial treatment, cleansing, masking, therapy (225
hours), anatomy and physiology (90 hours), orientation, rules and law (50 hours),
sanitation, safety and first aid (40 hours), superfluous hair removal (25 hours).
Sanitation in the practice of cosmetology services is a serious public health and safety
concern, and therefore it is covered as a component of teaching virtually every
cosmetology technique.



Appellants point to the curriculum guidelines for the facial curriculum in the rules that set 40 hours
for "sanitation, safety, and first aid," see Tex. Admin. Code § 83.120(b), to argue that LaFleur failed
to provide a "means of testing her proposition that sanitation training is sprinkled across 430 hours
of the cosmetology curriculum."

 We cannot conclude that the district court abused its discretion by overruling
appellants' objection and admitting this paragraph. See Bowie Mem'l Hosp., 79 S.W.3d at 52. The
topics and hours as attested to by LaFleur track the topics and hours set forth in the rules for the
facial curriculum. Further, appellants have failed to show that the judgment turned on the admission
of this paragraph. See Tex. R. App. P. 44.1; Central Expressway Sign Assocs., 302 S.W.3d at 870. 
The evidence was extensive concerning the curriculum covered by beauty schools in Texas, and the
record makes clear that sanitation was part of the curriculum. The actual number of hours devoted
to sanitation is not controlling here. We overrule appellants' fourth issue.


CONCLUSION


 For these reasons, we affirm the district court's judgment.


 __________________________________________

 Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed: July 25, 2012
1. Article I, section 19 of the Texas Constitution provides that:


 No citizen of this State shall be deprived of life, liberty, property, privileges or
immunities, or in any manner disfranchised, except by the due course of law of
the land.


Tex. Const. art. I, § 19. 
2. See generally Kuntz v. Khan, No. 03-10-00160-CV, 2011 Tex. App. LEXIS 446, at *3
(Tex. App.--Austin Jan. 21, 2011, no pet.) (mem. op.) (describing practice of eyebrow threading as
"a method of shaping eyebrows by using a piece of 100-percent cotton thread to pull individual hair
follicles out of the skin's pores"). 
3. The administrative actions against Momin, Rokhti, and Yogi remain pending. The
Departments's prosecution of these actions was stayed by agreement of the parties to this litigation,
without prejudice to any party.
4. Prosecution of the complaints against Satani's business were also stayed by agreement of
the parties to this litigation, without prejudice to any party.
5. The legislature amended the definition of cosmetology after this Court's decision in Kuntz.
See Act of June 17, 2011, 82d Leg., R.S., ch. 1241, § 12, 2011 Tex. Gen. Laws 1241 (current version
at Tex. Occ. Code Ann. § 1602.002 (West Supp. 2011)); Kuntz, 2011 Tex. App. LEXIS 446, at
*21-24 (discussing whether eyebrow threading falls within statutory definition of cosmetology prior
to 2011 amendment).
6. See Tex. Occ. Code Ann. §§ 1601.002 (West Supp. 2011) ("barbering" defined), 1601.251,
(West 2004) (certificate, license or permit required to perform act of barbering); 1602.002 (West
Supp. 2011) ("cosmetology" defined), 1602.251 (West Supp. 2011) (license or certificate required
to perform "practice of cosmetology"), 1602.403 (West Supp. 2011) (employment of license or
certificate holder); 16 Tex. Admin. Code §§ 83.1-83.120 (2011) (Tex. Dep't of Licensing and
Regulation, Cosmetologists). Although appellants' pleadings include provisions addressing
"barbering," they have not made specific arguments concerning the regulation of barbering, focusing
their challenge on cosmetology regulations. We, therefore, do the same.
7. In their fourth issue, the state defendants challenge the district court's denial of their motion
to strike expert testimony. Because we affirm the district court's summary judgment in favor of the
state defendants, we need not address this issue. See Tex. R. App. P. 44.1, 47.1.
8. Cf. Brantley v. Texas Youth Comm'n, No. 03-10-00019-CV, 2011 Tex. App. LEXIS 8220,
at *34-38 (Tex. App.--Austin Oct. 12, 2011, no pet.) (mem. op.) (in context of ultra vires claims,
citing Heinrich to support conclusion that "any claim for equitable relief from a constitutional
violation would . . . be barred by sovereign immunity" to the extent asserted against state agency);
Texas State Bd. of Public Accountancy v. Bass, No. 03-09-00251-CV, 2011 Tex. App. LEXIS 294,
*9-10, 25-26 (Tex. App.--Austin Jan. 14, 2011, no pet.) (mem. op.) (questioning holding in City
of Elsa in light of Heinrich but recognizing that governmental entities not immune from suits
challenging validity of statutes or ordinances).
9. Similarly, section 2001.038 of the government code permits suits against state agencies for
declaratory relief concerning the validity or applicability of their rules. See Tex. Gov't Code Ann.
§ 2001.038(a), (c) (West 2008) ("The state agency must be made a party to the action."); Friends of
Canyon Lake, Inc. v. Guadalupe-Blanco River Auth., 96 S.W.3d 519, 529 (Tex. App.--Austin 2002,
pet. denied) (section 2001.038 authorizes courts to determine whether "a rule is valid and/or
applicable") (citation omitted, emphasis in original). Appellants, however, amended their pleadings
to delete section 2001.038 of the government code as a basis for the district court's jurisdiction.
10. For example, the state defendants argue in their brief:


 [T]he thrust of [appellants'] suit is that the State Officials acted outside their
constitutional authority by applying the cosmetology laws to the practice of eyebrow
threading. Accordingly, although [appellants] do not themselves invoke the "ultra
vires" doctrine explicitly, they in fact assert a [sic] ultra vires claims falling squarely
within the Supreme Court's holdings in Heinrich and Reconveyance. (Emphasis
in original.)
11. Although appellants pleaded separate causes of action based upon substantive due process
and the privileges and immunities clause in article I, section 19 of the Texas Constitution, appellants
do not make separate arguments in their briefing, and the substance of their claims was the
same--that the regulations violated their right to earn an honest living in the occupation of one's
choice free from unreasonable governmental interference. We, therefore, do not address the
privileges and immunities clause separately but consider it as part of their substantive due process,
economic liberty challenge.
12. To bring a substantive due process claim, an individual also must establish a protected
interest. Liberty Mut. Ins. Co. v. Texas Dep't of Ins., 187 S.W.3d 808, 827 (Tex. App.--Austin
2006, pet. denied). For purposes of their motion for summary judgment, the state defendants assume
that the appellants had a protected, but not fundamental, liberty interest. See Rylander v. B & A
Mktg. Co., 997 S.W.2d 326, 333-34 (Tex. App.--Austin 1999, no pet.) (applying rational basis
review where fundamental liberty interest not at stake); Garay v. State, 940 S.W.2d 211, 218 (Tex.
App.--Houston [1st Dist.] 1997, pet. ref'd) (applying rational basis review to substantive due
process claim concerning right to seek and obtain employment); see also Martin v. Memorial Hosp.
at Gulfport, 130 F.3d 1143, 1148-50 (5th Cir. 1997) (recognizing the right to earn living in the
"common occupations of the community" as a protected, but not fundamental, liberty interest and
applying rational basis review to substantive due process challenge).
13. The evidence included the Department's discovery responses in which it named schools
that provided instruction on the practice of eyebrow threading. Appellants provided affidavits from
individuals from some of those schools. Some of the individuals testified that their school did not
teach eyebrow threading. Appellants' evidence also included excerpts from cosmetology textbooks
addressing eyebrow threading and their expert's testimony. Appellants characterize the references
in the textbooks as "cursory," and urge that their expert's testimony shows that eyebrow threading
is safe and should not require a cosmetology license. Their expert, who was a physician and
operated a medical spa, testified concerning existing medical literature and data from hair removal
treatments at her medical spa, including eyebrow threading, waxing, and laser hair removal. There
had only been one complication from threading at her medical spa. Her opinion was that the practice
of threading only required "a basic sanitation course."
14. After September 1, 2011, a license for a facialist is referred to as an esthetician
speciality license. See Tex. Occ. Code. Ann. § 1602.257 (West Supp. 2011) (amendments effective
Sept. 1, 2011).
15. The district court admitted the test questions under seal.
16. For example, appellants state in their brief:


 Appellant acknowledge that the government can constitutionally regulate the basic
sanitation aspects of eyebrow threading, but they vigorously challenge the notion that
they can do so using this regulatory regime. 


They compare eyebrow threaders to hair braiders who are required to complete 35 hours of training
and are eligible for a speciality certificate. See Tex. Occ. Code Ann. § 1602.258 (West Supp. 2011)
(requisites for speciality certificate eligibility determined by Department); 16 Tex. Admin.
Code §§ 83.20(b) (requirements for hair braiding speciality certificate), 83.120(b) (hair
braiding curriculum).
17. See Anthony B. Sanders, The "New Judicial Federalism" before its time: A
Comprehensive Review of Economic Substantive Due Process Under State Constitutional Law Since
1940 and the Reasons for Its Recent Decline, 55 Am. U. L. Rev. 457, 475, 478 (2005) (noting that
United States Supreme Court has not invalidated an economic regulation on economic substantive
due process grounds since 1937 and that "by the 1980s only a handful of states invalidated economic
regulations on substantive due process grounds, and then, only on occasion").